## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MICHAEL MARKOWICZ,                     :
                                       :
     Plaintiff,                       :
                                       :        Civil Action No.:     15-1335 (RC)
     v.                               :
                                       :        Re Document No.:     9
JEH CHARLES JOHNSON,                   :
*Secretary, United States Department of* :
*Homeland Security*,                   :
                                       :
     Defendant.                       :

## MEMORANDUM OPINION

### Granting in Part and Denying in Part Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment

## I.  INTRODUCTION

Plaintiff Michael Markowicz is a white man employed as a Special Agent by the United States Secret Service, an operational component within the United States Department of Homeland Security. In December 2010, Secret Service managers selected African American and Hispanic Special Agents instead of Special Agent Markowicz for promotion. Citing his belief that racial considerations affected the selection process, Special Agent Markowicz sued the Department of Homeland Security through its Secretary and brought discrimination and retaliation claims under Title VII of the Civil Rights Act of 1964.

In a pre-answer motion, the Department moves to dismiss Special Agent Markowicz's complaint and moves in the alternative for summary judgment in its favor on Special Agent Markowicz's claims. Because Special Agent Markowicz has withdrawn his retaliation claim, the Court will dismiss that claim. But because Special Agent Markowicz's complaint states a plausible discrimination claim, and because genuine issues of material fact exist with respect to

that claim for the parties to explore in discovery, the Court declines to grant the Department's

motion with respect to the discrimination claim.

## II. BACKGROUND[1]

### A. The Secret Service

1. Organizational Structure

The Secret Service is an operational component within the United States Department of

Homeland Security. *See Operational and Support Components*, U.S. Dep't of Homeland Sec.,

https://www.dhs.gov/operational-and-support-components (last updated June 28, 2016);[2] *see also*

6 U.S.C. § 381; 18 U.S.C. § 3056(g). The Director of the Secret Service leads the agency, along

with a Deputy Director, who manages its daily protective and investigative operations. *See*

*Leadership*, U.S. Dep't of Homeland Sec., http://www.secretservice.gov/about/leadership (last

visited Sept. 1, 2016).

Within the Secret Service, Assistant Directors manage various offices with the help of

their Deputy Assistant Directors. *See generally* Def.'s Mot. Dismiss or, in the Alternative, for

Summ. J. ("Def.'s Mot.") Ex. C, ECF No. 9-3 (listing the Assistant Directors in December 2010

and the Assistant Directors' respective offices, such as the "Office of Administration" and the

---

[1] At the motion-to-dismiss stage, the Court presumes that the plaintiff's factual allegations in the complaint are true. *See, e.g.*, *United States v. Philip Morris, Inc.*, 116 F. Supp. 2d 131, 135 (D.D.C. 2000). When citing to documents outside of the pleadings, the Court views the evidence in the light most favorable to Special Agent Markowicz. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (explaining that, on summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor"). The Court cites to the Department's Statement of Undisputed Material Facts, ECF No. 9, when it agrees with Special Agent Markowicz's complaint.

[2] The Court takes judicial notice of information posted on official public websites of government agencies. *See Pharm. Research & Mfrs. of Am. v. U.S. Dep't of Health & Human Servs.*, 43 F. Supp. 3d 28, 33 (D.D.C. 2014).

"Office of Investigations"); Magaw Decl. ¶¶ 1–2, 10–12, ECF No. 9-7 (discussing Deputy

Assistant Director Magaw's role within the Office of Strategic Intelligence and Information and

how he assisted the Assistant Director for that office). Within each office, Special Agents in

Charge ("SAICs") manage various divisions. *See, e.g.*, Elias Decl. ¶ 8, ECF No. 9-9 (noting that

SAIC Nelson Garabito managed the Protective Intelligence and Assessment Division). Within

each division, multiple Assistants to the Special Agent in Charge ("ATSAICs") may assist the

SAIC in managing the work for the division. *See, e.g.*, Garabito Decl. 66, ECF No. 9-5

(discussing the three ATSAIC positions available within the Protective Intelligence and

Assessment Division in October 2010); *id.* ¶ 19 (discussing how the Division sought to hire

ATSAICs to supervise work performed by the Division's Operations Center). ATSAICs in turn

supervise Special Agents. *See, e.g.*, Markowicz Sept. 2011 Decl. ¶ 7, Pl.'s Opp'n Def.'s Mot.

Dismiss or, in the Alternative, for Summ. J. ("Pl.'s Opp'n") Ex. A, ECF No. 16-1 (noting that

Special Agent Markowicz's first line supervisor in 2010 was ATSAIC Robert Long).

2.   Merit Promotion Plan for GS-14 and GS-15 Special Agent Positions

Secret Service Special Agents compete for promotion to positions at grade levels GS-14

and GS-15, which include ATSAIC positions. *See* Def.'s Mot. Ex. A, at 122–23, ECF No. 9-1

(reproducing the Secret Service's merit promotion plan for Special Agent positions, which states

that "[c]ompetitive procedures apply to . . . promotions for grade levels GS-14 and GS-15"); *see,*

*e.g.*, Am. Compl. ("Compl.") ¶ 19, ECF No. 3 (stating that an ATSAIC vacancy, in the Office of

Strategic Intelligence and Information's Protective Intelligence and Assessment Division, was

classified at the GS-14 level).[3] If they choose to participate in the promotion process, Special

---

[3] Because "[a] party may amend its pleading once as a matter of course within . . . 21 days after serving it," Fed. R. Civ. P. 15(a)(1), Special Agent Markowicz's Amended Complaint is the operative complaint here. *See* Aff. of Mailing, ECF No. 5 (indicating that Special Agent

Agents receive a Merit Promotion Plan ("MPP") score. Compl. ¶ 7; Def.'s Statement of

Undisputed Material Facts ("Def.'s Statement") ¶ 3, ECF No. 9. The MPP score for each Special

Agent is a weighted score that incorporates raw scores generated by

> (1) the evaluation of the Special Agent that the Special Agent's supervisor completes;
>
> (2) an "in-basket" assessment, designed to simulate the Special Agent's review of
> materials typically found in a GS-14 or GS-15 Special Agent's "in-basket" and thus
> designed to assess how the Special Agent "would make decisions about delegating
> responsibility" and about prioritizing information or situations presented;
>
> (3) a video-based situational judgment test; and
>
> (4) trained raters who evaluate and score the Special Agent's "Career Accomplishment
> Record."

Def.'s Mot. Ex. A, at 139–42.

Special Agents use their MPP scores to apply for GS-14 and GS-15 positions by bidding

on announced vacancies. Compl. ¶ 8; Def.'s Statement ¶ 4; *see* Def.'s Mot. Ex. A, at 145

(discussing the bidding process). After receiving Special Agents' bids, the Secret Service's

Personnel Division then refers three groups of eligible promotion candidates for consideration

with respect to each vacancy:

> (1) all Special Agents who bid on that specific vacancy and who are currently serving in
> a role that is at or above the grade level of the vacancy,
>
> (2) the highest-ranking thirty Special Agents who bid on that specific vacancy, and

---

Markowicz served his initial complaint on August 24, 2015); Compl. (showing that Special
Agent Markowicz filed his Amended Complaint, which includes an exhibit at the end of the
document, on August 28, 2015, or four days after he served his initial complaint).

(3) the highest-ranking thirty Special Agents overall who bid on any vacancies at the

same grade level as the vacancy being considered (*e.g.*, for a GS-14 vacancy, the

highest-ranking thirty Special Agents who bid on *any* GS-14 vacancies).

*See* Def.'s Mot. Ex. A, at 147. These three lists are called the "Reassignment Certificate," the

"Promotion Certificate," and the "Promotion Register," respectively. *See* Compl. ¶¶ 9–11; Def.'s

Statement ¶¶ 5–6, 10. Special Agents' MPP scores determine their positions on the ranked lists.

Compl. ¶ 12.

For each announced vacancy, the Secret Service's Advisory Board receives the three lists

described above and, from them, recommends a Special Agent for promotion. *See* Def.'s Mot.

Ex. A, at 147. The Board's membership includes the Secret Service's Deputy Director, the

Assistant Directors, the Chief of the Uniformed Division, and the Chief Counsel, with the Chief

of the Personnel Division in attendance but functioning as an advisor and secretary. *See id.*;

Def.'s Mot. Ex. C (listing the Board's membership in December 2010). After receiving the

Board's recommendation, the Director of the Secret Service may choose to concur with the

recommendation or to select another Special Agent for promotion from one of the three lists. *See*

Def.'s Mot. Ex. A, at 147.

The Board's recommendation process takes into account the views of the office and of

the division affected by the vacancy. At the meeting at which the Board considers which Special

Agent to recommend for a given vacancy, the Assistant Director of the office affected by the

vacancy will recommend one or more Special Agents for the vacancy. Magaw Decl. ¶ 29. The

Assistant Director's recommendation typically results from discussions about the vacancy

between the Assistant Director, his or her Deputy Assistant Director, and the Special Agent in

Charge ("SAIC") of the division affected by the vacancy. *See, e.g.*, Elias Decl. ¶ 10 (stating that

SAIC Garabito had input into Assistant Director Elias's recommendations to the Advisory

Board); Garabito Decl. ¶ 8–9, 14 (same); Magaw Decl. ¶ 12 (same).

### B.  ATSAIC Vacancies in the Protective Intelligence and Assessment Division of the Office for Strategic Intelligence and Information

#### 1.  Vacancy Announcement

On October 7, 2010, the Secret Service's Personnel Division announced a vacancy for an

Assistant to the Special Agent in Charge ("ATSAIC") in the Protective Intelligence and

Assessment Division in the Secret Service's Office for Strategic Intelligence and Information.

Compl. ¶ 19; Def.'s Statement ¶ 18. The announcement corresponded to three vacant ATSAIC

positions in that division. *See* Garabito Decl. ¶ 19 (discussing the three ATSAIC vacancies in the

Protective Intelligence and Assessment Division's Operations Center).

#### 2.  Candidates

Although Special Agent Markowicz bid on the ATSAIC vacancy, he ultimately was not

selected for promotion to any of the three open positions. Compl. ¶¶ 20, 22; Def.'s Statement

¶¶ 19, 21. Because his non-selection forms the basis of this suit, *see* Compl. ¶ 34, the Court

summarizes here the qualifications of Special Agent Markowicz and of several of his

competitors for the ATSAIC vacancies at the time they submitted their bids.

##### a.  Thomas Edwards

Special Agent Thomas Edwards was ranked first on the Promotion Certificate for the

Protective Intelligence and Assessment Division ATSAIC vacancies. *See* Def.'s Mot. Ex. B,

ECF No. 9-2 (reproducing the Promotion Certificate). He was ranked twelfth on the nationwide

Promotion Register. *See* Compl. Ex., ECF No. 3-1. According to Special Agent Markowicz's

complaint, "Secret Service personnel records reveal[] that [Special Agent Edwards] lists his race

as Hispanic," even though he "was previously identified as [w]hite." Compl. ¶ 30.

Special Agent Edwards's experience included four years and seven months in the Secret Service's San Diego Field Office, four years in the Vice Presidential Protective Division, four months at the Rowley Training Center, two years and one month in the Office of Government and Public Affairs, and six months in the Washington Field Office. Compl. Ex.; *accord* Def.'s Mot. Ex. B. In total, he had eleven years and six months of experience as a Special Agent. *See* Compl. Ex. But he provided protective services during only his four years in the Vice Presidential Protective Division. *See id.* Special Agent Edwards was promoted to one of the vacant ATSAIC positions in the Protective Intelligence and Assessment Division. *See* Compl. ¶¶ 23–25; Def.'s Statement ¶¶ 22–24.

### b. Nathan Morgan

Special Agent Nathan Morgan was ranked second on the Promotion Certificate. *See* Def.'s Mot. Ex. B. He had a total of eleven years and nine months of experience as a Special Agent, of which he spent three years and ten months providing protective services through the Presidential Protective Division. *See id.* Because the Advisory Board chose to recommend Special Agent Morgan for a promotion position in a different Secret Service office, the Advisory Board did not recommend him for promotion to an ATSAIC position in the Protective Intelligence and Assessment Division. *See* Elias Decl. ¶ 8; Magaw Decl. ¶ 19.

### c. Razvan Simonica

Special Agent Razvan Simonica was ranked third on the Promotion Certificate. *See* Def.'s Mot. Ex. B. He had a total of twelve years and nine months as a Special Agent, of which he spent four years providing protective services through the Vice Presidential Protective Division. *See id.* Like Special Agent Markowicz, Special Agent Simonica was not recommended for promotion to one of the ATSAIC positions in the Protective Intelligence and Assessment

Division. *See* Elias Decl. ¶¶ 8, 17; Magaw Decl. ¶ 19. But even though Special Agent Simonica

was not promoted to one of those positions, he was promoted to another position during the same

promotion cycle. *See* Markowicz Sept. 2011 Decl. ¶ 9.

### d. Plaintiff Michael Markowicz

Special Agent Markowicz was ranked fifth on the Promotion Certificate for the

Protective Intelligence and Assessment Division ATSAIC vacancies, *see* Def.'s Mot. Ex. B, and

twenty-fifth on the nationwide Promotion Register, *see* Compl. Ex. He is white. Markowicz Sept.

2011 Decl. ¶ 3.

Special Agent Markowicz's experience included five years and three months in the

Houston Field Office, two years and three months in the William Clinton Protective Division,

three years and six months in the Vice Presidential Protective Division, three years in the

Information Resources Management Division, and one year in the Washington Field Office.

Compl. Ex.; *accord* Def.'s Mot. Ex. B; *see also* Markowicz Dec. 2015 Decl., Pl.'s Opp'n Ex. B,

ECF No. 16-1 (describing Special Agent Markowicz's service in the Houston Field Office, in the

Vice Presidential Protective Division, and in the Information Resources Management Division).

In total, he had twelve years of experience as a Special Agent. *See* Compl. Ex. Of those, eight

years and ten months were devoted to protective services: his two years and three months in the

William Clinton Protective Division, his three years and six months in the Vice Presidential

Protective Division, and his three years in the Information Resources Management Division. *See*

*id.* Nonetheless, Special Agent Markowicz was not recommended or selected for promotion to

one of the ATSAIC positions in the Protective Intelligence and Assessment Division. *See* Compl.

¶¶ 22–25; Def.'s Statement ¶¶ 21–24.

### e.  Jonathan Wynn

Special Agent Jonathan Wynn was ranked eighteenth on the Promotion Certificate for the Protective Intelligence and Assessment Division ATSAIC vacancies. *See* Def.'s Mot. Ex. B; *accord* Compl. Ex. He was ranked seventy-fifth on the nationwide Promotion Register. *See* Compl. Ex. Special Agent Wynn is African American. Elias Decl. ¶ 8; Garabito Decl. ¶ 14.

Special Agent Wynn's experience included four years and four months in the Atlanta Field Office, two years and six months in the Intelligence Division (the precursor to the Protective Intelligence and Assessment Division), four years and seven months in the Presidential Protective Division, and one year and eight months in the Washington Field Office. Compl. Ex.; *see also* Def.'s Mot. Ex. B; Elias Decl. ¶ 21 (describing Special Agent Wynn's experience in the Intelligence Division). In total, he had twelve years and eleven months of experience as a Special Agent. *See* Compl. Ex. Of those, seven years and eight months were devoted to protective services: his two years and six months in the Intelligence Division and his four years and seven months in the Presidential Protective Division. *See id.* Special Agent Wynn was promoted to one of the vacant ATSAIC positions in the Protective Intelligence and Assessment Division. *See* Compl. ¶¶ 23–25; Def.'s Statement ¶¶ 22–24.

### f.  Gregory Naranjo

Special Agent Gregory Naranjo was ranked twentieth on the Promotion Certificate for the Protective Intelligence and Assessment Division ATSAIC vacancies. *See* Def.'s Mot. Ex. B; *accord* Compl. Ex. He was ranked ninety-second on the nationwide Promotion Register. *See* Compl. Ex. Special Agent Naranjo is Hispanic. Elias Decl. ¶ 8; Garabito Decl. ¶ 14.

Special Agent Naranjo's experience included nine years in the Miami Field Office, one year and two months in the Intelligence Division (the precursor to the Protective Intelligence and

Assessment Division), and two years and five months in the Protective Intelligence and Assessment Division. Def.'s Mot. Ex. B; *see also* Compl. Ex.; Elias Decl. ¶ 21 (describing the Intelligence Division). In total, he had twelve years and seven months of experience as a Special Agent. *See* Def.'s Mot. Ex. B. Of those, just three years and seven months were devoted to protective services: his one year and two months in the Intelligence Division, and two years and five months in the Protective Intelligence and Assessment Division. *See id.* Special Agent Naranjo was promoted to one of the vacant ATSAIC positions in the Protective Intelligence and Assessment Division. *See* Compl. ¶¶ 23–25; Def.'s Statement ¶¶ 22–24.

### 3.  Deliberations and Selections

The parties do not dispute the basic facts about the fate of these Special Agents' promotion applications. The Assistant Director for the Office of Strategic Intelligence and Information, Richard Elias, recommended Special Agents Edwards, Wynn, and Naranjo for promotion to the ATSAIC positions in the Protective Intelligence and Assessment Division. Compl. ¶ 23; Def.'s Statement ¶ 22; *see* Elias Decl. ¶ 1, 8 (stating Assistant Director Elias's title and his recommendations for the positions). Because Assistant Director Elias was unable to attend the Advisory Board meeting at which the positions were discussed, then-Deputy Assistant Director Craig Magaw presented Assistant Director Elias's recommendations to the Board. Compl. ¶ 24; Def.'s Statement ¶ 23; Elias Decl. ¶¶ 8–9. The Advisory Board concurred with Assistant Director Elias's recommendations. Compl. ¶ 25; Def.'s Statement ¶ 24. Special Agents Edwards, Wynn, and Naranjo were then promoted to the ATSAIC positions in the Protective Intelligence and Assessment Division. Compl. ¶ 25; Def.'s Statement ¶ 24. Special Agent Markowicz was not. Compl. ¶ 22; Def.'s Statement ¶ 21.

The record, however, contains competing narratives of how Assistant Director Elias settled on Special Agents Edwards, Wynn, and Naranjo for his recommendations. Special Agent Markowicz has described one version of events, which differs in some respects from the versions adopted by Assistant Director Elias, by Deputy Assistant Director Magaw, and by SAIC Garabito (the Special Agent in Charge for the Protective Intelligence and Assessment Division). *Compare* Markowicz Sept. 2011 Decl. ¶ 13, *with* Elias Decl. ¶¶ 14–17; Garabito Decl. ¶¶ 8, 12, 17; Magaw Decl. ¶¶ 10, 16, 18–19. The Court briefly summarizes both narratives.

Special Agent Markowicz's narrative, which is found in his March 2011 administrative discrimination complaint and in his September 2011 declaration, reports his understanding about the deliberations, based on information gleaned from the informal counseling process that was required before he could file a discrimination complaint. *See* Def.'s Mot. Ex. D, at 4, ECF No. 9-4 (reproducing Special Agent Markowicz's narrative in his administrative discrimination complaint); Markowicz Sept. 2011 Decl. ¶ 13 (reproducing it in his September 2011 declaration). *See generally* Def.'s Mot. Ex. D, at 2 (indicating that Special Agent Markowicz had completed required Equal Employment Opportunity ("EEO") counseling before he filed his administrative discrimination complaint). Special Agent Markowicz reports that SAIC Garabito first suggested the three top-ranked candidates—Special Agents Edwards, Morgan, and Simonica—as his recommendations for promotion to the ATSAIC positions in his division. *See* Def.'s Mot. Ex. D, at 4; Markowicz Sept. 2011 Decl. ¶ 13; *see also supra* Parts II.B.2.a–c (discussing the three top-ranked candidates). SAIC Garabito purportedly "believed these to be the best qualified, due to their rankings." Def.'s Mot. Ex. D, at 4; *accord* Markowicz Sept. 2011 Decl. ¶ 13.

But, according to Special Agent Markowicz, SAIC Garabito "changed his selection criteria" after he learned that "his number one . . . selection was going to be selected for

promotion in his division, but that . . . the . . . other two submitted candidates . . . were being promotion in his division, but that . . . the . . . other two submitted candidates . . . were being promoted in other divisions." Def.'s Mot. Ex. D, at 4; *accord* Markowicz Sept. 2011 Decl. ¶ 13. SAIC Garabito reportedly then sought "a candidate who worked in his division and a candidate that had previous Presidential Protective Division . . . experience." Def.'s Mot. Ex. D, at 4; *accord* Markowicz Sept. 2011 Decl. ¶ 13. Special Agent Markowicz states that SAIC Garabito felt that "an agent from within his own division would enhance the overall morale of the . . division" and that Presidential Protective Division experience would be desirable because agents in that division work closely with agents in SAIC Garabito's division. Markowicz Sept. 2011 Decl. ¶ 13; *see also* Def.'s Mot. Ex. D, at 4 (discussing the benefits of candidates with Presidential Protective Division experience). As a result, Special Agents Edwards, Wynn, and Naranjo were chosen for the three ATSAIC positions in SAIC Garabito's division. *See* Def.'s Mot. Ex. D, at 4; Markowicz Sept. 2011 Decl. ¶ 13.

Assistant Director Elias, Deputy Assistant Director Magaw, and SAIC Garabito report that the deliberations were more dynamic. *See* Elias Decl. ¶¶ 14, 18; Garabito Decl. ¶¶ 8–9, 12; Magaw Decl. ¶ 20. As an initial matter, SAIC Garabito denied that he was the recommending official for the three ATSAIC positions; he states that, though he "had discussions with and expressed [his] preferences to [Assistant Director] Elias and [Deputy Assistant Director] Magaw," he was "not a member of the Advisory Board which makes the recommendations for selections for promotion." Garabito Decl. ¶ 9. Assistant Director Elias and Deputy Assistant Director Magaw agree with this characterization. *See* Elias Decl. ¶ 10 ("SAIC Garabito had input into who was recommended to the Advisory Board. . . . However, the Advisory Board as a whole makes the recommendations for selection."); Magaw Decl. ¶ 12 ("[Assistant Director] Elias and I had conversations with SAIC Garabito concerning who would be best suited for the

position[s]. . . . However, . . . [t]he Advisory Board as a whole makes the recommendations for selections.").

With respect to SAIC Garabito's supposed first set of recommendations (Special Agents Edwards, Morgan, and Simonica), SAIC Garabito denies recommending "the three initial names," but he does admit that Assistant Director Elias initially decided that his office "would try to get the individuals at the top of the list during the Advisory Board discussions." Garabito Decl. ¶ 8. SAIC Garabito reports that, in support of that initial strategy, "[i]t was discussed that selecting top candidates would improve the quality of the supervisors in the division and raise the overall perception of the division for future candidates," particularly given that "[t]he top candidates had good reputations and high merit promotion scores." *Id.* And Deputy Assistant Director Magaw states that he did support the recommendations of Special Agents Edwards and Morgan for the vacancies, because he had previously worked with them and "had positive experiences with both of them." Magaw Decl. ¶ 10. Assistant Director Elias likewise recalls discussing Special Agent Morgan as a potential candidate. Elias Decl. ¶ 17.

Although Assistant Director Elias, Deputy Assistant Director Magaw, and SAIC Garabito do not specify exactly why they deviated from their initial strategy, Assistant Director Elias and Deputy Assistant Director Magaw do report that they could not recommend Special Agent Morgan for an ATSAIC position because he was "selected for a position on the Presidential Protective Division . . . during this same bid cycle." *Id.*; *accord* Magaw Decl. ¶ 19. In discussing why they settled on Special Agents Wynn and Naranjo (in addition to Special Agent Edwards) for the ATSAIC positions, the three officials cite the same reasons as those mentioned in Special Agent Markowicz's narrative. They state that they recommended Special Agent Naranjo because he was assigned to SAIC Garabito's division already, because he "was an excellent performer

within the division," and because "promoting from within the [d]ivision would increase moral[e] and motivate others within [the division] to perform at a high caliber." Garabito Decl. ¶ 16; *accord* Elias Decl. ¶ 21; Magaw Decl. ¶¶ 23, 27. And they state that they recommended Special Agent Wynn because he had previous experience in the Presidential Protective Division and because the "overwhelming majority of the support provided" by the Protective Intelligence and Assessment Division is for the Presidential Protective Division. Garabito Decl. ¶ 16; *accord* Elias Decl. ¶ 21; Magaw Decl. ¶ 23, 27.

As discussed earlier, Special Agent Wynn was ranked eighteenth on the Promotion Certificate, and Special Agent Naranjo was ranked twentieth. *See* Def.'s Mot. Ex. B; *supra* Parts II.B.2.e–f. Despite not being selected for promotion, Special Agent Markowicz was ranked fifth on the Promotion Certificate. *See* Def.'s Mot. Ex. B; *supra* Part II.B.2.d.

### C.  Assistant Director Luczko's Statement

After Special Agent Markowicz learned about his nonselection for an ATSAIC position in the Protective Intelligence and Assessment Division, he began inquiring about the possible reasons for that nonselection. *See* Markowicz Sept. 2011 Decl. ¶ 9. And he alleges that he received a significant lead during a casual conversation with George Luczko, the Secret Service's Assistant Director for the Office of Professional Responsibility. *See id.* (discussing Special Agent Markowicz's conversation with Assistant Director Luczko). By virtue of his title, Assistant Director Luczko was a member of the promotion Advisory Board. *See* Def.'s Mot. Ex. C (showing Assistant Director Luczko's title and membership on the Advisory Board). After Special Agent Markowicz asked Assistant Director Luczko about whether Special Agent Markowicz's name was "blackballed" for some reason from getting promoted, and after Special Agent Markowicz mentioned "the disparity in ranking of those promoted in [his] stead,"

14

Assistant Director Luczko allegedly responded with the following statement: "Mike, this is

'off-the-record', but if there is a Black or a Hispanic on that qualified list, then we . . . have to

promote them ahead of you." Markowicz Sept. 2011 Decl. ¶ 9 (internal quotation marks

omitted); *accord* Compl. ¶ 31.

Although Assistant Director Luczko remembers speaking with Special Agent Markowicz,

he states that "do[es] not recall making the 'off the record statement' about a Black or Hispanic

being promoted ahead of him." Luczko Decl. ¶¶ 8–9, ECF No. 9-6. But, as Special Agent

Markowicz points out, Assistant Director Luczko does not explicitly deny that he made the

statement. *See* Compl. ¶ 31; Luczko Decl. ¶¶ 8–9.[4]

### D.  Procedural History

Armed with Assistant Director Luczko's statement, Special Agent Markowicz filed an

administrative discrimination complaint against the Department of Homeland Security and then

filed suit in this Court. *See* Compl.; Def.'s Mot. Ex. D (reproducing the administrative

complaint). His complaint in this Court alleged that the Department violated Title VII of the

Civil Rights Act of 1964[5] by discriminating against him on the basis of his race and by

retaliating in response to his protected Title VII activities. *See* Compl. ¶¶ 33–51.[6] In its

---

[4] Because Special Agent Markowicz has withdrawn his retaliation claim, facts relevant to that claim are not recounted here. *See* Pl.'s Opp'n 14 ("Plaintiff withdraws Count II - Retaliation . . . .").

[5] Pub. L. No. 88-352, Title VII, 78 Stat. 241, 253–66 (codified as amended at 42 U.S.C. §§ 2000e–2000e-17).

[6] Although Special Agent Markowicz's complaint also asserts that "this action arises under . . . the Age Discrimination in Employment Act," Compl. ¶ 4, he never later asserts an age discrimination claim, *see id.* ¶¶ 33–51. The Department accordingly argues that Special Agent Markowicz has failed to state an age discrimination claim. Mem. Supp. Def.'s Mot. Dismiss & in the Alternative for Summ. J. ("Def.'s Mem.") at 1 n.1, ECF No. 9. The Court agrees with the Department and therefore will dismiss any age discrimination allegations in the Amended Complaint.

pre-answer motion, the Department seeks dismissal of Special Agent Markowicz's complaint, or, in the alternative, summary judgment in its favor on his claims. *See* Def.'s Mot. Dismiss or, in the Alternative, for Summ. J., ECF No. 9.

## III.  RETALIATION

Although Special Agent Markowicz opposes dismissal of and summary judgment on his discrimination claim, *see* Pl.'s Opp'n 2–14, he has chosen to withdraw his retaliation claim from his complaint in response to the Department's motion, *see id.* at 14. The Court will therefore dismiss that claim with prejudice under Federal Rule of Civil Procedure 41(a)(2). *See generally* Fed. R. Civ. P. 41(a) (requiring dismissal by court order when the plaintiff files neither a stipulation of dismissal signed by all parties, nor a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment).

## IV.  DISCRIMINATION

The Court turns now to the Department's motion with respect to Special Agent Markowicz's discrimination claim. Because the Department devotes the first section of its brief arguing for dismissal of the claim and the second section arguing in the alternative for summary judgment in the Department's favor, the Court addresses the Department's dismissal arguments before addressing its summary judgment arguments.

## A.  Arguments for Dismissal

### 1.  Legal Standard[7]

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim" in order to give the defendant fair notice of the claim and the grounds upon which it rests. Fed. R. Civ. P. 8(a)(2); *accord Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam). A motion to dismiss under Rule 12(b)(6) does not test a plaintiff's ultimate likelihood of success on the merits; rather, it tests whether a plaintiff has properly stated a claim. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Brewer v. District of Columbia*, 891 F. Supp. 2d 126, 130 (D.D.C. 2012). A court considering such a motion presumes that the complaint's factual allegations are true and construes them liberally in the plaintiff's favor. *See, e.g.*, *United States v. Philip Morris, Inc.*, 116 F. Supp. 2d 131, 135 (D.D.C. 2000).

Nevertheless, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This means that a plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555–56 (citations and footnote omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory

---

[7] Although the Department moves to dismiss under both Federal Rule of Civil Procedure 12(b)(1) and Federal Rule of Civil Procedure 12(b)(6), it raises only Rule 12(b)(6) arguments in its motion. *Compare* Def.'s Mot. ("Defendant . . . hereby moves to dismiss Plaintiff's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) . . . ."), *with* Def.'s Mem. 8–11 (asserting no arguments about the Court's jurisdiction). *See generally* Fed. R. Civ. P. 12(b)(1) (allowing parties to assert the defense of "lack of subject-matter jurisdiction" by motion). The Court therefore recites the governing legal standard for Rule 12(b)(6) motions to dismiss only.

statements," are therefore insufficient to withstand a motion to dismiss. *Iqbal*, 556 U.S. at 678. A

court need not accept a plaintiff's legal conclusions as true, *see id.*, nor must a court presume the

veracity of the legal conclusions that are couched as factual allegations, *see Twombly*, 550 U.S.

at 555.

In a Title VII case, however, it is not necessary for the plaintiff to plead all elements of

his prima facie case in the complaint. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511–14

(2002); *Bryant v. Pepco*, 730 F. Supp. 2d 25, 28–29 (D.D.C. 2010). A Title VII plaintiff need

only allege "facts that, taken as true, render his claim of [discrimination] plausible." *Harris v.*

*D.C. Water & Sewer Auth.*, 791 F.3d 65, 70 (D.C. Cir. 2015). "I was turned down for a job

because of my race," accompanied by factual allegations that render that claim plausible, are "all

a complaint has to say to survive a motion to dismiss under Rule 12(b)(6)." *Sparrow v. United*

*Air Lines, Inc.*, 216 F.3d 1111, 1115 (D.C. Cir. 2000) (internal quotation marks omitted);

*Jackson v. Acedo*, No. 08-1940, 2009 WL 2619446, at *4 (D.D.C. Aug. 26, 2009) (discussing

*Sparrow* in light of the Supreme Court's later decisions in *Twombly* and *Iqbal*).[8]

## 2.  Analysis

As an initial matter, the Court addresses the Department's assertion that Special Agent

Markowicz did not respond to the Department's dismissal arguments, as well as the

Department's accompanying suggestion that Special Agent Markowicz has "therefore conceded

that dismissal is appropriate." Reply Mem. Supp. Def.'s Mot. Dismiss or, in the Alternative, for

---

[8] In deciding a motion to dismiss under Rule 12(b)(6), a court may not rely on matters outside the pleadings without converting the motion to one for summary judgment, Fed. R. Civ. P. 12(d), though it may consider documents attached to the complaint as exhibits, documents incorporated by reference, and matters on which the court may take judicial notice, *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007). In addressing the Department's arguments for dismissal of Special Agent Markowicz's discrimination claim, therefore, the Court considers only the complaint and the exhibit attached to it. *See* Compl. & Ex.

Summ. J. ("Def.'s Reply") 2, ECF No. 17. But Special Agent Markowicz's opposition brief

directly responds to at least one of the Department's arguments for dismissal. *Compare* Def.'s

Mem. 9–10 (arguing that Assistant Director Luczko's statement is irrelevant to this case because

he "is not alleged to have been the selecting official for the vacancy" and "courts routinely hold

that . . . statements by non-decisionmakers are not probative of discrimination"), *with* Pl.'s

Opp'n 5–6 (responding to the Department's argument by asserting that Assistant Director

Luczko's comment "cannot be marginalized" because he "was in close proximity to the selecting

officials, . . . was involved in the selection process and is a first-hand witness to the selection

criteria of the [Advisory] Board"). The Court therefore declines to find that Special Agent

Markowicz conceded that dismissal is appropriate. The Court will accordingly address the

Department's arguments in favor of dismissal on their merits.

To begin, the Court summarizes some governing principles. Title VII declares that "[a]ll

personnel actions affecting employees . . . in executive agencies . . . shall be made free from any

discrimination based on race." 42 U.S.C. § 2000e-16(a). This provision extends to federal

employees "the full rights available in the courts as are granted to individuals in the private

sector." *Loeffler v. Frank*, 486 U.S. 549, 558–59 (1988) (internal quotation marks omitted)

(quoting *Chandler v. Roudebush*, 425 U.S. 840, 841 (1976)). And it applies to Special Agent

Markowicz's discrimination claim here. *See* 5 U.S.C. § 105 ("'Executive agency' means an

Executive department . . . ."); *see also id.* § 101 ("The Executive departments [include] . . . [t]he

Department of Homeland Security.").

"The protections of Title VII apply to minority and nonminority employees alike."

*Mastro v. Potomac Elec. Power Co.*, 447 F.3d 843, 850 (D.C. Cir. 2006). Thus, "similarly

situated employees are not to be treated differently solely because they differ with respect to

race, . . . regardless of whether the discrimination is directed against majorities or minorities." *Id.* (internal quotation mark omitted) (quoting *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 71–72 (1977)). But because "'there is nothing inherently suspicious' about an employer's decision to promote a minority applicant instead of a white applicant, . . . a majority-group plaintiff alleging Title VII discrimination must show 'additional background circumstances that support the suspicion that the defendant is that unusual employer who discriminates against the majority.'" *Id.* at 851 (quoting *Harding v. Gray*, 9 F.3d 150, 153 (D.C. Cir. 1993)). "Background circumstances" may simply be "something 'fishy' about the facts of the case at hand that raises an inference of discrimination," no matter whether it is something about the employer's general background or something about the particular facts of the case. *Id.* at 851–52 (quoting *Harding*, 9 F.3d at 153).

Here, the Department argues that Special Agent Markowicz's discrimination claim "fail[s] to state a plausible claim for relief." Def.'s Mem. 9. In support of its position, the Department cites (1) to Special Agent Markowicz's failure to allege that his qualifications were far superior to those of Special Agent Wynn and Naranjo, and (2) to the idea that Assistant Director Luczko's remark is irrelevant because Assistant Director Luczko was not the ultimate decisionmaker with respect to the ATSAIC position to which Special Agent Markowicz applied. *See* Def.'s Mem. 9–10.

The Department's assertions, however, do not appreciate the narrowness of the Court's role when deciding whether to grant a motion to dismiss a Title VII claim. The "only question" before the Court now "is whether [Special Agent Markowicz] alleged facts that, taken as true, render his claim of [discrimination] plausible." *Harris v. D.C. Water & Sewer Auth.*, 791 F.3d 65, 70 (D.C. Cir. 2015). Because the Court's role at this early stage "is not to speculate about

which factual allegations are likely to be proved after discovery," *id.*, the Court need not address

the merits of any particular means by which Special Agent Markowicz might prove his claim.

After all, "discovery may even uncover direct evidence of discrimination" that eliminates Special

Agent Markowicz's possible need to rely on circumstantial evidence (such as Special Agents

Markowicz, Wynn and Naranjo's relative qualifications). *See Chappell–Johnson v. Powell*, 440

F.3d 484, 488–89 (D.C. Cir. 2006).

Thus, the Court merely assesses whether Special Agent Markowicz "alleged facts that,

taken as true, render his claim plausible." *Harris*, 791 F.3d at 70. Applying that principle to a

Title VII claim alleging retaliatory discharge, the D.C. Circuit found that claim plausible when

the plaintiff had merely alleged (1) "a five-month gap between [his employer's] knowledge of

his discrimination complaint and his termination," (2) that his performance had not been below

expectations, and (3) that his position had not been eliminated. *Id.* at 69–70. Likewise here, the

Court finds Special Agent Markowicz's Title VII discrimination claim plausible, given that

Special Agent Markowicz has alleged that (1) that he was not promoted, Compl. ¶ 22; and

(2) that only minority Special Agents—including two significantly lesser-ranked Special

Agents—were promoted, *id.* ¶¶ 23, 30 & Ex.

Moreover, when a plaintiff's facts, "if shown, would be at least sufficient to state a prima

facie case," the plaintiff has "necessarily alleged facts sufficient to render his claim plausible at

the motion to dismiss stage." *Harris*, 791 F.3d at 70. Here, to make out a prima facie case of race

discrimination, Special Agent Markowicz need only allege (1) that he suffered an adverse

employment action, (2) that the unfavorable action gives rise to an inference of discrimination,

and (3) that background circumstances support the suspicion that the Secret Service is "that

unusual employer who discriminates against the majority." *Mastro v. Potomac Elec. Power Co.*,

447 F.3d 843, 850–51 (D.C. Cir. 2006); *see id.* at 851 (explaining that the "background circumstances" requirement "substitutes for the minority plaintiff's burden to show that he is a member of a racial minority" (internal quotation marks omitted) (quoting *Harding*, 9 F.3d at 153)). As discussed below, because Special Agent Markowicz has alleged all three elements of a prima facie race discrimination claim, he necessarily has pled a plausible claim that must survive a motion to dismiss under Rule 12(b)(6).

First, he alleged that he suffered an adverse employment action by alleging that the Secret Service declined to promote him to the ATSAIC position for which he applied. *See Baird v. Gotbaum*, 662 F.3d 1246, 1248 (D.C. Cir. 2011) (noting that "failing to promote" is an adverse employment action for purposes of a Title VII discrimination claim (quoting *Douglas v. Donovan*, 559 F.3d 549, 552 (D.C. Cir. 2009))); Compl. ¶ 22.

Second, Special Agent Markowicz has alleged facts to show that his non-promotion gives rise to an inference of discrimination: because he was as qualified as the Special Agents ultimately promoted to the position, "neither an absolute or relative lack of qualifications nor the absence of a vacancy in the job sought prevented [his] promotion." *Holcomb v. Powell*, 433 F.3d 889, 896 (D.C. Cir. 2006); *see* Compl. ¶ 25 (alleging that other Special Agents were selected for the ATSAIC position); Compl. Ex. (showing that Special Agent Markowicz's qualifications compared favorably to at least some of the Special Agents selected). *See generally Holcomb*, 433 F.3d at 895–96 (explaining that a plaintiff makes out a prima facie case—and thereby alleges facts that give rise to an inference of discrimination—by showing that neither the plaintiff's lack of qualifications nor the absence of a vacancy prevented the plaintiff's promotion).

Third and finally, Special Agent Markowicz has alleged the requisite background circumstances to support his discrimination claim in two ways: (1) by alleging that the Secret

Service promoted Special Agents whose qualifications were inferior to his own, and (2) by alleging that Assistant Director Luczko stated that racial considerations affected the promotion process. *See Mastro*, 447 F.3d at 851–52 (explaining that "background circumstances" include any evidence showing that "there is something 'fishy' about the facts of the case," and may include "evidence that a minority applicant was promoted over . . . [a] better-qualified white applicant[]" (internal quotation marks omitted) (quoting *Harding*, 9 F.3d at 153)); Compl. ¶ 31 (discussing Assistant Director Luczko's statement); Compl. Ex. (showing that Special Agents Wynn and Naranjo were ranked lower than Special Agent Markowicz).

Because the Department specifically attacks the two ways that Special Agent Markowicz establishes "background circumstances," *see* Def.'s Mem. 9–10, the Court discusses the allegations about the Special Agents' relative qualifications and about Assistant Director Luczko's statement in more detail. But the Court notes, as a preliminary matter, that establishing a prima facie case of Title VII race discrimination is "not onerous," even for a white plaintiff. *Mastro*, 447 F.3d at 852 (internal quotation mark omitted) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

With respect to the allegations about the Special Agents' relative qualifications, the Department argues that they cannot suggest that any discrimination took place, because Special Agent Markowicz does not allege that his qualifications were "far superior" to Special Agent Wynn's and to Special Agent Naranjo's. Def.'s Mem. 9 (emphasis omitted) (quoting *Singleton v. Potter*, 402 F. Supp. 2d 12, 31 (D.D.C. 2005)). The Department cites to the valid principle that, to show that an employer's qualifications-based explanation for hiring or promoting someone else was pretextual, a plaintiff must show that he "was '*significantly* better qualified for the job' than those ultimately chosen." *Adeyemi v. District of Columbia*, 525 F.3d 1222, 1227 (D.C. Cir.

2008) (quoting *Holcomb*, 433 F.3d at 897). But proving pretext is not Special Agent

Markowicz's burden at the pleading stage, when his principal burden is to allege that "something

'fishy' . . . raises an inference of discrimination." *Mastro*, 447 F.3d at 851 (internal quotation

mark omitted) (quoting *Harding*, 9 F.3d at 153). Thus, accepting as true Special Agent

Markowicz's assertions that he "had more combined protection experience . . . than the other

listed candidates," Compl. ¶ 29, and accepting that Special Agent Markowicz was ranked higher

than Special Agents Wynn and Naranjo, Compl. Ex., the Court must conclude that Special Agent

Markowicz has indeed alleged something "fishy" that raises an inference of discrimination.

     With respect to the allegations about Assistant Director Luczko's statement, the

Department argues that they are irrelevant to any alleged discrimination, because "Mr. Luczko is

not alleged to have been the selecting official for the vacancy to which [Special Agent

Markowicz] applied." Def.'s Mem. 10. But the complaint does allege that Assistant Director

Luczko was a member of the promotion Advisory Board, and therefore a member of the body

that provides the Secret Service Director with recommendations for selection. *See* Compl. ¶ 14

(indicating that the Assistant Directors are all members of the Advisory Board); *id.* ¶¶ 16, 18

(alleging that the Board provides the Secret Service Director with recommendations for

selection, and that the Director selects Special Agents for promotion by either signing or not

signing the Board's recommendation list). In these circumstances, courts regularly treat

recommending and selecting officials similarly and assume that recommending officials wield

significant decisionmaking power. *See, e.g.*, *Carter v. Mineta*, 125 F. App'x 231, 232, 235–36

(10th Cir. 2005); *Hairsine v. James*, 517 F. Supp. 2d 301, 304–05, 307–14 (D.D.C. 2007);

*Simpson v. Leavitt*, 437 F. Supp. 2d 95, 99–100 (D.D.C. 2006); *Oliver–Simon v. Nicholson*, 384

F. Supp. 2d 298, 303–05, 307–14 (D.D.C. 2005); *Waters v. Gonzales*, 374 F. Supp. 2d 187,

189–96 (D.D.C. 2005). Furthermore, because recommendations are part of the process by which later selections are made, an unfair or biased recommendation can result in an unfair and biased selection. *Cf. Mastro*, 447 F.3d at 855 (indicating that an "inexplicably unfair" investigation that resulted in the plaintiff's termination would allow a reasonable jury to reasonably conclude that discrimination motivated the termination). Thus, because Assistant Director Luczko's statement, if proven, would be evidence of bias in the recommending process that prepared the Secret Service Director's promotion selections, a process about which he had first-hand knowledge, the statement is indeed relevant to Special Agent Markowicz's discrimination claim. And, alongside the qualifications-based allegations, it suffices to establish something "fishy" here that raises an inference of discrimination.

For these reasons, Special Agent Markowicz has alleged sufficient "background circumstances" to sustain a prima facie discrimination claim against the Department. He has thus necessarily also "alleged facts sufficient to render his claim plausible at the motion to dismiss stage." *Harris*, 791 F.3d at 70. The Court therefore rejects the Department's invitation to dismiss Special Agent Markowicz's discrimination claim.

### B.  Arguments for Summary Judgment

The Court turns now to the Department's arguments for summary judgment in its favor and begins by summarizing the relevant legal standard.

#### 1.  Legal Standard

Under Rule 56 of the Federal Rules of Civil Procedure, a court must grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material" fact is one capable of affecting the substantive outcome of the litigation. *See Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if there is enough evidence for a reasonable jury to return a verdict for the non-movant. *See Scott v. Harris*, 550 U.S. 372, 380 (2007). The inquiry under Rule 56 is essentially "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

The principal purpose of summary judgment is to determine whether there is a genuine need for trial by disposing of factually unsupported claims or defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). The movant bears the initial burden of identifying portions of the record that demonstrate the absence of any genuine issue of material fact. *See* Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 323. In response, the non-movant must point to specific facts in the record that reveal a genuine issue that is suitable for trial. *See* Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 324. The non-movant may not rest upon mere allegations or denials but must instead present affirmative evidence. *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987) (citing *Anderson*, 477 U.S. at 257).

In considering a motion for summary judgment, a court must "eschew making credibility determinations or weighing the evidence." *Czekalski v. Peters*, 475 F.3d 360, 363 (D.C. Cir. 2007). All underlying facts and inferences must be analyzed in the light most favorable to the non-movant. *See Anderson*, 477 U.S. at 255. Nevertheless, conclusory assertions offered without any evidentiary support do not establish a genuine issue for trial. *See Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999).

Given that the Department's motion for summary judgment comes before discovery has commenced in this case, the Court pays special heed to the principle that, typically, "summary judgment may not be granted until all parties have had a full opportunity to conduct discovery."

*United States ex rel. Folliard v. Gov't Acquisitions, Inc.*, 764 F.3d 19, 25 (D.C. Cir. 2014)

(internal quotation marks omitted) (quoting *Convertino v. U.S. Dep't of Justice*, 684 F.3d 93, 99

(D.C. Cir. 2012)). This principle is particularly relevant in a Title VII case, where "discovery

may even uncover direct evidence of discrimination, thus entirely eliminating the need to prove a

prima facie case." *Chappell–Johnson v. Powell*, 440 F.3d 484, 488–89 (D.C. Cir. 2006). The

Court could thus deny the Department's motion for summary judgment on Special Agent

Markowicz's discrimination claim simply because of this case's preliminary posture. But, to

ensure that this case is not the atypical one in which pre-discovery summary judgment is proper,

the Court will analyze the Department's arguments on their merits. *Cf. Info. Handling Servs.,*

*Inc. v. Def. Automated Printing Servs.*, 338 F.3d 1024, 1032 (D.C. Cir. 2003) (explaining that

summary judgment "ordinarily" is proper only after discovery (internal quotation marks omitted)

(quoting *Americable Int'l, Inc. v. Dep't of Navy*, 129 F.3d 1271, 1274 (D.C. Cir. 1997))).

2.  Analysis

The Department's arguments in favor of summary judgment rest principally on the same

points that it raises in favor of dismissal: the fact that Special Agent Markowicz did not have

significantly better qualifications than the Special Agents chosen for promotion, and the idea that

Assistant Director Luczko's statement is irrelevant to the discrimination analysis. *See* Def.'s

Mem. 11–16. The main difference is that, on summary judgment, the Department can rely on its

own evidence to support its arguments. *See, e.g.*, *id.* at 11–14 (citing Secret Service managers'

declarations to support the Department's qualifications-based justification for Special Agent

Markowicz's non-promotion); *id.* at 16 (citing an exhibit to show that Assistant Director Luczko

"was not even present at the Advisory Board meeting" that considered the promotions to the

ATSAIC positions in the Protective Intelligence and Assessment Division).

But Special Agent Markowicz argues—and the Court agrees—that the Department does not appreciate the significance of Assistant Director Luczko's statement. *See* Pl.'s Opp'n 5–9. On summary judgment, of course, the non-movant's evidence must be believed, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986), and so the Court assumes that Assistant Director Luczko did make the statement.[9] And, as discussed earlier, the statement is relevant to the discrimination analysis here because, even if Assistant Director Luczko was not the selecting official, his statement is evidence of bias in the recommending process that prepared the Secret Service Director's eventual selections. *See supra* Part IV.A.2 (citing *Mastro v. Potomac Elec. Power Co.*, 447 F.3d 843, 855 (D.C. Cir. 2006)).

Furthermore, even if Assistant Director Luczko was not himself present at the meeting at which the Advisory Board considered Special Agent Markowicz's promotion application, the record indicates that a representative attended on his behalf. *See* Def.'s Mot. Ex. C (showing that another person attended on behalf of Assistant Director Luczko's office, the Office of Professional Responsibility); *cf.* Elias Decl. ¶ 8 (showing that, when Assistant Director Elias could not attend an Advisory Board meeting, the Deputy Assistant Director for his office attended in his stead). Thus, if Assistant Director Luczko sought to urge the Board to take racial considerations into account, he could have done so through his representative, without being

---

[9] Currently, only Special Agent Markowicz's recollection of Assistant Director Luczko's statement supports the contention that Assistant Director Luczko made the statement. *See* Compl. ¶ 31; Markowicz Sept. 2011 Decl. ¶ 9; Markowicz Nov. 2011 Decl., Pl.'s Opp'n Ex. C, ECF No. 16-1, at 36; *cf.* Luczko Decl. ¶¶ 8–9 (stating that Assistant Director Luczko "do[es] not recall making the 'off the record statement' about a Black or Hispanic being promoted ahead of [Special Agent Markowicz]"). Hearsay evidence that cannot be converted to admissible evidence is not considered on summary judgment. *See Greer v. Paulson*, 505 F.3d 1306, 1315 (D.C. Cir. 2007). But, as a statement of an opposing party or the opposing party's agent, Assistant Director Luczko's statement likely is not hearsay. *See* Fed. R. Evid. 802(d)(2)(D) (stating that statements are not hearsay when "offered against an opposing party and . . . made by the party's agent or employee on a matter within the scope of that relationship and while it existed.").

there for the Board meeting himself. But more importantly, his comments were directed to how

the process operates—a process about which he had first-hand knowledge—whether or not he

was there on any particular day. Thus, contrary to the Department's argument that Assistant

Director Luczko's statement is "not evidence of discrimination, direct or otherwise," Def.'s

Reply 3, the statement is evidence of discrimination because it supports the idea that the Board

took racial considerations into account—whether because it was the Board's standard practice or

because Assistant Director Luczko prompted the Board to do so. And because Assistant Director

Luczko's statement raises a genuine question about whether racial considerations affected the

Secret Service's decision not to promote Special Agent Markowicz, it requires the Court to deny

the Department's motion for summary judgment. *See Brady v. Office of the Sergeant at Arms*,

520 F.3d 490, 495 (D.C. Cir. 2008) (noting that employees may establish that an employer's

nondiscriminatory reason for its employment action was pretextual—and thereby avoid summary

judgment against them—with "evidence suggesting that the employer treated other employees of

a different race . . . more favorably in the same factual circumstances").

The Department does not change the Court's conclusion by citing to the principle that

"stray remarks of nondecisionmakers are not sufficient, standing alone, to raise an inference of

discrimination." *Aliotta v. Bair*, 614 F.3d 556, 570 n.6 (D.C. Cir. 2010) (brackets, ellipses, and

internal quotation mark omitted) (quoting *Bevan v. Honeywell, Inc.*, 118 F.3d 603, 610 (8th Cir.

1997)); *see* Def.'s Reply 3–4 (citing cases in support of this principle). As noted earlier,

Assistant Director Luczko played a role in the decisionmaking process, even if the ultimate

decision did not rest with him. And his statement is evidence not just of his own possible

motivation to promote minority applicants, but also of considerations affecting the Advisory

Board as a whole. *See* Compl. ¶ 31 (reporting that Assistant Director Luczko stated that "we,"

meaning the Advisory Board, "have to promote" minority applicants if they appear on the list of qualified applicants). Because Assistant Director Luczko's statement speaks to the decisional process underlying the decision not to promote Special Agent Markowicz, it is evidence of discrimination in the decisional process, not a "stray remark" of a nondecisionmaker. *Cf. Spaeth v. Georgetown Univ.*, 943 F. Supp. 2d 198, 206 (D.D.C. 2013) (explaining that, unlike Assistant Director Luczko's statement here, "statements by decisionmakers unrelated to the decisional process" are not direct evidence (internal quotation mark omitted) (quoting *Price Waterhouse v. Hopkins*, 490 U.S. 228, 277 (1989) (O'Connor, J., concurring))).

Having decided that the Court must deny the Department's motion for summary judgment on Special Agent Markowicz's discrimination claim because of this evidence, the Court addresses the other evidence in this case only briefly. As the Court found when addressing its arguments for dismissal, the Department cannot find refuge in the valid principle that, to show that an employer's qualifications-based explanation for hiring or promoting someone else was pretextual, a plaintiff must show that he "was '*significantly* better qualified for the job' than those ultimately chosen." *Adeyemi v. District of Columbia*, 525 F.3d 1222, 1227 (D.C. Cir. 2008) (quoting *Holcomb v. Powell*, 433 F.3d 889, 897 (D.C. Cir. 2006)); *see* Def.'s Mem.11–15 (justifying Special Agent Markowicz's non-promotion by reference to this principle); Def.'s Reply 5–8 (same). The presence of the above-referenced evidence of discrimination here entitles Special Agent Markowicz to proceed to discovery, regardless of the Department's qualifications-based evidence in its favor.[10] And Special Agent Markowicz has more evidence supporting his entitlement to proceed to discovery.

---

[10] The Court notes, however, that Special Agent Markowicz's ranking was significantly higher than those of Special Agents Wynn and Naranjo.

The record alludes to other ways in which Special Agent Markowicz might attack the Department's nondiscriminatory justifications for his non-promotion. He is not limited to comparing his qualifications to those of the Special Agents that were ultimately promoted; he can always "seek to expose other flaws in the employer's explanation." *Hamilton v. Geithner*, 666 F.3d 1344, 1352 (D.C. Cir. 2012) (internal quotation mark omitted) (quoting *Holcomb*, 433 F.3d at 897). Special Agent Markowicz has already done so in a number of ways. *See, e.g.*, Def.'s Mot. Ex. D, ¶ 15.C (attacking, in Special Agent Markowicz's administrative complaint, the experience-based justifications for selecting Special Agents Wynn and Naranjo over Special Agent Markowicz); Markowicz Sept. 2011 Decl. ¶ 13 (same, in a later declaration); Markowicz Nov. 2011 Decl., ECF No. 16-1, at 26–34 (same).[11] Among other things, he highlights the fact that Special Agent Edwards was promoted "despite having neither Presidential Protective Division experience nor Protective Intelligence [and Assessment] Division experience, but having Vice Presidential Protective Division experience," like Special Agent Markowicz. Markowicz Sept. 2011 Decl. ¶ 13; *accord* Markowicz Nov. 2011 Decl., ECF No. 16-1, at 31–32. And he notes that, even if Special Agent Wynn's Presidential Protective Division experience made him better qualified for promotion, four other white Special Agents with Presidential Protective Division experience were not promoted, despite being ranked higher than Special Agent Wynn. *See* Markowicz Sept. 2011 Decl. ¶ 13; Markowicz Nov. 2011 Decl., ECF No. 16-1, at 30, 33.

And Special Agent Markowicz has alluded to yet another source of circumstantial evidence to rebut the Department's nondiscriminatory explanation for his non-promotion:

---

[11] Because Special Agent Markowicz's November 2011 declaration lacks internal page numbers, the Court cites to the page numbers automatically generated by ECF.

evidence of a pattern or practice of discrimination, which can be collateral evidence to support an individual's discrimination claim. *See Artis v. Yellen*, 309 F.R.D. 69, 74 (D.D.C. 2015) (noting that "pattern-or-practice" evidence can bolster an individual's discrimination claim); *see also Holcomb*, 433 F.3d at 899 (explaining that a Title VII plaintiff can challenge an employer's legitimate, non-discriminatory explanation with "data showing that the defendant employs [or promotes] members of the plaintiff's protected class at rates far below their numbers in the applicant pool and the general population"). Along these lines, Special Agent Markowicz has noted that, on two other occasions in 2010, the Secret Service chose a lower-ranked minority applicant for promotion instead of a higher-ranked white male applicant. *See* Markowicz Sept. 2011 Decl. ¶ 9. If after discovery Special Agent Markowicz can establish that this pattern is statistically significant, then this evidence—together with his other evidence of discrimination and the alleged flaws in the Secret Service's qualifications-based justifications for his non-promotion—could potentially raise a genuine issue of material fact about whether racial considerations motivated the Secret Service's decision not to promote him. *See generally Bolden v. Clinton*, 847 F. Supp. 2d 28, 35 (D.D.C. 2012) (explaining that a plaintiff must "establish the statistical significance of his [pattern-or-practice] evidence" for it to be probative of discrimination).

Special Agent Markowicz has thus raised several sources of circumstantial evidence—in addition to Assistant Director Luczko's statement—that entitle him to explore in discovery the Secret Service's motivations when it chose not to promote him. The questions that Special Agent Markowicz has raised require the Court to, at least for now, deny the Department's motion for summary judgment.

## V.  CONCLUSION

Because Special Agent Markowicz has withdrawn his retaliation claim, the Court will dismiss that claim. Because Special Agent Markowicz has stated a plausible discrimination claim and because genuine issues exist meriting discovery with respect to that claim, the Court denies the Department's motion to dismiss or, in the alternative, for summary judgment on the discrimination claim.

For the foregoing reasons, the Department's motion to dismiss or, in the alternative, for summary judgment (ECF No. 9) is **GRANTED IN PART** and **DENIED IN PART**. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  September 1, 2016                                                RUDOLPH CONTRERAS
                                                                         United States District Judge