# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| MICHAEL MARKOWICZ, | : | | |
| | : | | |
| Plaintiff, | : | | |
| | : | Civil Action No.: | 15-1335 (RC) |
| v. | : | | |
| | : | Re Document No.: | 29 |
| KIRSTJEN M. NIELSEN, | : | | |
| *Secretary, United States Department of* | : | | |
| *Homeland Security*,[1] | : | | |
| | : | | |
| Defendant. | : | | |

## MEMORANDUM OPINION

### DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

Plaintiff Michael Markowicz is a white man employed as a Special Agent by the United States Secret Service, an organization within the purview of the United States Department of Homeland Security (the "Department"). He claims that the Department denied him a promotion because of his race, and instead promoted three minority candidates. This decision, according to Special Agent Markowicz, violated the anti-discrimination provision of Title VII of the Civil Rights Act of 1964.

Defendant has moved for summary judgment, arguing that the Department's decision was based on nondiscriminatory criteria. Because a reasonable jury could conclude that the

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedures, Kirstjen M. Nielson has been substituted for Elaine C. Duke in her official capacity as Secretary of Homeland Security.

Department's proffered criteria were a pretext for discrimination, the Court denies Defendant's motion.

## II. BACKGROUND[2]

### A. The Secret Service's Organizational Structure

The Secret Service is housed within the Department, and its organizational structure dictates its decision making with respect to promotions. That structure is as follows:

- The Secret Service's Director and Deputy Director oversee Assistant Directors, who manage the organization's offices. *See generally* Def.'s Mot. Summ. J. ("Def.'s Mot.") Ex. 13 (listing the Assistant Directors in December 2010 and the Assistant Directors' respective offices, such as the "Office of Administration" and the "Office of Investigations"), ECF No. 29-14.

- Deputy Assistant Directors aid the Assistant Directors in their office management duties. *See generally* Decl. of Craig Magaw ("Magaw Decl.") ¶¶ 1–2, 10–12 (discussing Deputy Assistant Director Magaw's role within the Office of Strategic Intelligence and Information), ECF No. 29–4.

---

[2] As the Department notes, Special Agent Markowicz's Statement of Disputed Material Facts ("Pl.'s Statement"), ECF No. 31-1, fails to contest many of the facts asserted in the Department's Statement of Undisputed Material Facts ("Def.'s Statement"), ECF No. 29. *See* Def.'s Reply Supp. Mot. Summ. J. ("Def.'s Reply") at 2 n.1, ECF No. 33. Pursuant to Local Rule 7(h), the Court therefore assumes that the Department's uncontested facts are admitted.

However, even admitting the Department's facts, the Court "must always determine for itself whether the record and any undisputed material facts justify granting summary judgment." *Grimes v. District of Columbia*, 794 F.3d 83, 95 (D.C. Cir. 2015) (quoting *id.* at 97 (Griffith, J., concurring)). In this section, therefore, the Court recounts undisputed facts by citing to Defendant's Statement, portions of Special Agent Markowicz's declarations that are not in dispute with Defendants' Statement, and other portions of the record to provide a more exhaustive summary of the facts of this case. *See* Fed. R. Civ. P. 56(c) ("The court . . . may consider other materials in the record.").

- Special Agents in Charge manage divisions within each office, under the direction of Assistant Directors and Deputy Assistant Directors. *See, e.g.*, Decl. of Richard Elias ("Elias Decl.") ¶ 8 (noting that Special Agent in Charge Nelson Garabito managed the Protective Intelligence and Assessment Division ("PIAD")), ECF No. 29-3.

- Assistants to the Special Agent in Charge ("ATSAICs") assist the Special Agent in Charge of each division. *See, e.g.*, Decl. of Nelson Garabito ("Garabito Decl.") ¶ 19 (discussing the three ATSAIC positions available within PIAD in October 2010), ECF No. 29-5.

- And ATSAICs in turn supervise Special Agents. *See, e.g.*, Sept. 2011 Decl. of Michael Markowicz ("Markowicz Sept. 2011 Decl.") ¶ 7 (noting that Special Agent Markowicz's first line supervisor in 2010 was ATSAIC Robert Long), Pl.'s Opp'n Def.'s Mot. Summ. J. ("Pl.'s Opp'n") Ex. A, ECF No. 31.

## B. Vacancy 10101

### 1. Procedure

On October 7, 2010, the Secret Service's Personnel Division announced a vacancy ("Vacancy 10101") for three ATSAIC positions in PIAD, within the Office for Strategic Intelligence and Information. Def.'s Statement ¶¶ 10–11; Garabito Decl. ¶ 19. Special Agent Markowicz applied to fill one of those open positions. Def.'s Statement ¶ 12.

Positions in the Secret Service are assigned "grade levels" corresponding to their seniority. *See* Def.'s Mot. Ex. 8 at 5–9, ECF No. 29–9. Vacancy 10101 was a GS-14 grade level position, and Special Agent Markowicz was one of many GS-13 employees seeking the promotion, along with one GS-14 employee seeking a lateral move. Def.'s Statement ¶¶ 10, 12–13. To be eligible for a promotion to the GS-14 level or above, Special Agents must receive a

Merit Promotion Plan ("MPP") score. Def.'s Statement ¶ 3. Each Special Agent's MPP score incorporates raw scores generated by:

(1) A current supervisor's evaluation of the Special Agent;

(2) An "in-basket" assessment of how the Special Agent delegates responsibility and prioritizes information;

(3) A video-based situational judgment test; and

(4) An evaluation of the Special Agent's "Career Accomplishment Record."

Def.'s Mot. Ex. 8 at 16–21.

Special Agents with MPP scores apply for GS-14 and GS-15 positions by "bidding" on announced vacancies through a system administered by the Personnel Division. Def.'s Mot. Ex. 8 at 24 (discussing the bidding process). After receiving bids for a vacancy, the Personnel Division generates three lists of eligible promotion candidates:

(1) The "Reassignment Certificate": All Special Agents who bid on the vacancy and who are currently serving in a role that is at or above the vacancy's grade level (*e.g.*, for a GS-14 vacancy, all GS-14, GS-15, and higher-level applicants);

(2) The "Promotion Certificate": The thirty Special Agents with the highest MPP scores who bid on that specific vacancy, ranked by MPP score; and

(3) The "Promotion Register": The thirty Special Agents with the highest MPP scores who bid on any vacancies at the same grade level as the vacancy being considered, ranked by MPP score (*e.g.*, for a GS-14 vacancy, the highest-ranking thirty Special Agents who bid on *any* GS-14 vacancies at the time).

*See* Def.'s Statement ¶¶ 5–6, 10; Def.'s Mot. Ex. 8 at 26.

The three lists are then submitted to an Advisory Board charged with making personnel decisions at the GS-14 level and above.  *See* Def.'s Mot. Ex. 8 at 26.  The Advisory Board's membership includes the Secret Service's Deputy Director, Chief of Staff, Assistant Directors, Chief of the Uniformed Division, and Chief Counsel.  *See id.*; Def.'s Mot. Ex. 13 (listing the Board's membership in December 2010), ECF No. 29–14.  The Board recommends a candidate or candidates to the Secret Service's Director, who may concur with the recommendation or select a different candidate to fill the vacancy. *See* Def.'s Mot. Ex. 8 at 26.

In making its recommendations, the Advisory Board considers the views of the office and the division affected by the vacancy.  These views are expressed by the Assistant Director of the affected office, who recommends one or more candidates to the Advisory Board after discussions with the office's Deputy Assistant Director and the Special Agent in Charge of the affected division.  Magaw Decl. ¶ 12, 29; Elias Decl. ¶ 10 (stating that Special Agent in Charge Garabito had input into Assistant Director Elias's recommendations to the Advisory Board); Garabito Decl. ¶ 8–9, 14 (same).  The Advisory Board gives considerable weight to the relevant Assistant Director's recommendations when making final recommendations to the Director.  *See* Elias Decl. ¶ 8.

## 2.  Selection

Because Vacancy 10101 was for PIAD positions within the Office of Strategic Intelligence and Information, the Assistant Director for that office, Richard Elias, was charged with recommending candidates for consideration by the Advisory Board.  Elias Decl. ¶ 8. Assistant Director Elias consulted with the Office's then-Deputy Assistant Director, Craig Magaw, and the Special Agent in Charge of PIAD, Nelson Garabito, before submitting his recommendations.  *Id.*  Assistant Director Elias ultimately recommended Special Agents Thomas

Edwards, Jonathan Wynn, and Gregory Naranjo for promotion, and the Board accepted those recommendations. Def.'s Statement ¶ 16; *see* Elias Decl. ¶ 1, 8. The Director of the Secret Service concurred with the Advisory Board's decision, and Special Agents Edwards, Wynn, and Naranjo were promoted to the three vacant PIAD ATSAIC positions. Def.'s Statement ¶ 17; Def.'s Mot. Ex. 10 at 2, ECF No. 29-11. Special Agent Markowicz was not promoted.

### 3. Candidates

Because Special Agent Markowicz's suit arises from his non-promotion to Vacancy 10101, the Court will briefly summarize the qualifications of Special Agent Markowicz and the three successful candidates.

*a. Thomas Edwards*

Special Agent Edwards was ranked first on the Promotion Certificate for Vacancy 10101, meaning he had the highest MPP score of any GS-13 applicant, and he was ranked twelfth on the nationwide Promotion Register. Def.'s Mot. Ex. 10; Markowicz Sept. 2011 Decl. ¶ 13. His race is listed as Hispanic in the Secret Service personnel records, although there is evidence that his fellow Special Agents believed he was white at the time of his promotion.[3] Def.'s Statement ¶ 19; Markowicz Sept. 2011 Decl. ¶ 13.

Special Agent Edwards spent four years and seven months in the Secret Service's San Diego Field Office, four years in the Vice Presidential Protective Division, four months at the

---

[3] The Department asserts that if the Advisory Board promoted Special Agent Edwards under the impression that he was white, that fact discredits the argument that the Department discriminated against Special Agent Markowicz, another white man, in the same promotion decision. Def.'s Reply at 16–17 (citing *Murray v. Gilmore*, 406 F.3d 708, 715 (D.C. Cir. 2005)). But the record is insufficient to determine whether the Board was under this impression, considering Special Agent Edwards's official race designation. Assistant Director Elias's conclusory assertion that he is "unaware of SA Edwards' race," Elias Decl. ¶ 8, is not sufficient to resolve the question, and the Court declines to resolve it here.

Rowley Training Center, two years and one month in the Office of Government and Public Affairs, and six months in the Washington Field Office. Def.'s Mot. Ex. 11, ECF No. 29-12. In total, he had eleven years and six months of experience as a Special Agent. *Id*. But he provided protective services only during his four years in the Vice Presidential Protective Division. *See id.* Notably, he did not serve in either PIAD or the Presidential Protective Division.

### b. Jonathan Wynn

Special Agent Wynn was ranked eighteenth on the Promotion Certificate and seventy-fifth on the nationwide Promotion Register. Def.'s Mot. Ex. 10; Markowicz Sept. 2011 Decl. ¶ 13. He is African American. Elias Decl. ¶ 8; Garabito Decl. ¶ 14.

Special Agent Wynn spent four years and four months in the Atlanta Field Office, two years and six months in the Intelligence Division (the precursor to PIAD), four years and seven months in the Presidential Protective Division, and one year and eight months in the Washington Field Office. Def.'s Mot. Ex. 11; Elias Decl. ¶ 21. In total, he had thirteen years and one month of experience as a Special Agent. *See* Def.'s Mot. Ex. 11. Of those, seven years and eight months were devoted to protective services: his two years and six months in the Intelligence Division and his four years and seven months in the Presidential Protective Division. *See* Def.'s Mot. Ex. 11.

### c. Gregory Naranjo

Special Agent Naranjo was ranked twentieth on the Promotion Certificate and ninety-second on the nationwide Promotion Register. Def.'s Mot. Ex. 10; Markowicz Sept. 2011 Decl. ¶ 13. He is Hispanic. Elias Decl. ¶ 8; Garabito Decl. ¶ 14.

Special Agent Naranjo spent nine years in the Miami Field Office, one year and two months in the Intelligence Division, and two years and five months in PIAD. Def.'s Mot. Ex. 11;

*see also* Elias Decl. ¶ 21.  He was therefore seeking promotion within his current division.  In total, he had twelve years and seven months of experience as a Special Agent.  *See* Def.'s Mot. Ex. 11.  Of those, just three years and seven months were devoted to protective services: his one year and two months in the Intelligence Division, and two years and five months in PIAD.  *See id.*

### d.  Plaintiff Michael Markowicz

Special Agent Markowicz was ranked fifth on the Promotion Certificate and twenty-fifth on the nationwide Promotion Register.  Def.'s Mot. Ex. 10; Markowicz Sept. 2011 Decl. ¶ 13.  He is white.  Markowicz Sept. 2011 Decl. ¶ 3.

Special Agent Markowicz spent five years and two months in the Houston Field Office, two years and two months in the William Clinton Protective Division,[4] three years and seven months in the Vice Presidential Protective Division, three years in the Information Resources Management Division, and eight months in the Washington Field Office.  Def.'s Mot. Ex. 11;[5] *see also* Oct. 2017 Decl. of Michael Markowicz ("Markowicz Oct. 2017 Decl.") at 8, Pl.'s Opp'n Ex. B, ECF No. 31.[6]  In total, he had approximately fifteen years of experience as a Special Agent.  *Id.* at 7.  Of those, eight years and ten months were devoted to protective services: his

---

[4] This Division was charged with protecting the First Lady, Hilary Clinton, while the Presidential Protective Division was charged with protecting President Clinton. *See* Markowicz Dep. 12:19–21, 14:6–15, ECF No. 29-2.  When his William Clinton Protective Division assignment concluded, Special Agent Markowicz declined a position with the Presidential Protective Division in favor of a position with the Vice Presidential Protective Division. *Id.* 15:3–9.

[5] There are slight discrepancies between Defendant's Motion Exhibit 11 and Special Agent Markowicz's Declaration regarding the amount of time Special Agent Markowicz spent in each position.  The Court relies primarily on Exhibit 11.

[6] Because Special Agent Markowicz's October 2017 declaration lacks well-defined paragraph numbers, the Court cites to the page numbers.

two years and three months in the William Clinton Protective Division, his three years and six months in the Vice Presidential Protective Division, and his three years in the Information Resources Management Division. *Id.* at 8.

### C. George Luczko's Statement

Shortly after Special Agent Markowicz learned of his non-promotion, he allegedly had a revealing conversation with a member of the Secret Service's Advisory Board, George Luczko, who was the Assistant Director for the Office of Professional Responsibility. *See* Def.'s Mot. Ex. 13; Markowicz Sept. 2011 Decl. ¶ 9. According to Special Agent Markowicz, he mentioned his non-promotion to Assistant Director Luczko, and Assistant Director Luczko responded with the following statement: "Mike, this is 'off-the-record', but if there is a Black or a Hispanic on that qualified list, then we . . . have to promote them ahead of you." Markowicz Sept. 2011 Decl. ¶ 9 (internal parentheses omitted).

Although Assistant Director Luczko remembers speaking with Special Agent Markowicz, he states that he "do[es] not recall making the 'off the record statement' about a Black or Hispanic being promoted ahead of him." 2011 Decl. of George Luczko ("Luczko 2011 Decl.") ¶¶ 8–9, Pl.'s Opp'n Ex. D, ECF No. 31. But, as Special Agent Markowicz points out, Assistant Director Luczko does not explicitly deny that he made the statement. *See* Luczko 2011 Decl. ¶¶ 8–9.

### D. Procedural History

Special Agent Markowicz filed an administrative complaint and then, having failed to obtain relief through the administrative process, filed suit in this Court against the Department alleging, among other claims, that the Department violated Title VII of the Civil Rights Act of

1964[7] by discriminating against him on the basis of his race.  *See* Compl.; Def.'s Mot. Dismiss Alternative Summ. J. Ex. D (reproducing the administrative complaint), ECF No. 9-4.  This Court denied the Department's pre-answer motion for dismissal or, in the alternative, summary judgment on Special Agent Markowicz's discrimination claim.  *Markowicz v. Johnson*, 206 F. Supp. 3d 158, 178 (D.D.C. 2016).  It now takes up the Department's renewed summary judgment motion.

## III.  ANALYSIS

For the reasons explained below, the Court holds that a reasonable jury could find that the Department discriminated against Special Agent Markowicz when it decided not to promote him. The Court therefore denies Defendant's motion for summary judgment.

### A.  Legal Standards

### 1.  Summary Judgment

Under Rule 56 of the Federal Rules of Civil Procedure, a court must grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A "material" fact is one capable of affecting the substantive outcome of the litigation.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is "genuine" if there is enough evidence for a reasonable jury to return a verdict for the non-movant.  *See Scott v. Harris*, 550 U.S. 372, 380 (2007).  The inquiry under Rule 56 is essentially "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

---

[7] Pub. L. No. 88-352, Title VII, 78 Stat. 241, 253–66 (codified as amended at 42 U.S.C. §§ 2000e–2000e-17).

The principal purpose of summary judgment is to determine whether there is a genuine need for trial by disposing of factually unsupported claims or defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). The movant bears the initial burden of identifying portions of the record that demonstrate the absence of any genuine issue of material fact. *See* Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 323. In response, the non-movant must point to specific facts in the record that reveal a genuine issue that is suitable for trial. *See* Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 324. The non-movant may not rest upon mere allegations or denials but must instead present affirmative evidence. *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987) (citing *Anderson*, 477 U.S. at 257).

In considering a motion for summary judgment, a court must "eschew making credibility determinations or weighing the evidence." *Czekalski v. Peters*, 475 F.3d 360, 363 (D.C. Cir. 2007). All underlying facts and inferences must be analyzed in the light most favorable to the non-movant. *See Anderson*, 477 U.S. at 255. Nevertheless, conclusory assertions offered without any evidentiary support do not establish a genuine issue for trial. *See Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999).

Importantly, "[w]hile summary judgment must be approached with specific caution in discrimination cases, a plaintiff is not relieved of [his] obligation to support [his] allegations by affidavits or other competent evidence showing that there is a genuine issue for trial." *Morgan v. Fed. Home Loan Mortg. Corp.,* 172 F. Supp. 2d 98, 104 (D.D.C. 2001) (quoting *Calhoun v. Johnson,* No. 95–2397, 1998 WL 164780, at *3 (D.D.C. Mar. 31, 1998) (internal citation omitted), *aff'd,* 328 F.3d 647, 649 (D.C. Cir. 2003)); *see also Marshall v. James,* 276 F. Supp. 2d 41, 47 (D.D.C. 2003) (holding that special caution "does not eliminate the use of summary judgment in discrimination cases") (citing cases). Although the Court's analysis will be more

circumspect here, it "will continue to grant a motion for summary judgment in which the nonmoving party has failed to submit evidence that creates a genuine factual dispute and the moving party is entitled to a judgment as a matter of law." *Singleton v. Potter*, 402 F. Supp. 2d 12, 24 (D.D.C. 2005)

## 2. Title VII

"Title VII of the Civil Rights Act makes it unlawful for an employer to 'fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" *Brady v. Office of Sergeant at Arms,* 520 F.3d 490, 493 (D.C. Cir. 2008) (quoting 42 U.S.C. § 2000e–2(a)(1)). It extends to federal employees "the full rights available in the courts as are granted to individuals in the private sector." *Loeffler v. Frank*, 486 U.S. 549, 558–59 (1988) (internal quotation marks omitted) (quoting *Chandler v. Roudebush*, 425 U.S. 840, 841 (1976)). And it "establishes two elements for an employment discrimination case: (i) the plaintiff suffered an adverse employment action (ii) because of the employee's race, color, religion, sex, or national origin." *Brady*, 520 F.3d at 493.

"The protections of Title VII apply to minority and nonminority employees alike." *Mastro v. Potomac Elec. Power Co.*, 447 F.3d 843, 850 (D.C. Cir. 2006). And those protections applied to Special Agent Markowicz as a Department of Homeland Security employee. *See* 5 U.S.C. § 105 ("'Executive agency' means an Executive department"); *see also id.* § 101 ("The Executive departments [include] . . . [t]he Department of Homeland Security."). He is therefore entitled to raise a Title VII claim that the Department discriminated against him on the basis of his race.

At the summary judgment stage, courts evaluate Title VII claims differently depending on whether a plaintiff provides direct evidence of discrimination or circumstantial evidence. Direct evidence of discrimination generally entitles the plaintiff to a jury trial. *Ayissi–Etoh v. Fannie Mae*, 712 F.3d 572, 576–77 (D.C. Cir. 2013). In the absence of direct evidence of discrimination, however, the Court must apply the three-step, burden-shifting framework set forth in *McDonnell Douglas v. Green,* 411 U.S. 792, 802–03 (1973). Under this framework, the plaintiff bears the initial burden of establishing a *prima facie* case of discrimination by a preponderance of the evidence. *Id.* at 802. For a majority-group plaintiff—such as Markowicz, a white man—to establish a *prima facie* case of discrimination, he must show (1) that he suffered an adverse employment action; (2) that the unfavorable action gives rise to an inference of discrimination; and (3) that background circumstances support the suspicion that the Secret Service is "that unusual employer who discriminates against the majority." *Mastro*, 447 F.3d at 850–51. If a plaintiff succeeds in making out a *prima facie* case, the burden shifts to the defendant to rebut the presumption of discrimination by producing "evidence that the adverse employment actions were taken for a legitimate, nondiscriminatory reason." *Aka v. Wash. Hosp. Ctr.,* 156 F.3d 1284, 1289 (D.C. Cir. 1998) (citations omitted).[8] If the defendant succeeds in

---

[8] The Department "assume[s] that Plaintiff has established a *prima facie* case of discrimination," and the Court agrees with that conclusion. Def.'s Mot. at 7, ECF No. 29. First, the Department's failure to promote Special Agent Markowicz is an adverse action. *See Baird v. Gotbaum*, 662 F.3d 1246, 1248 (D.C. Cir. 2011) (noting that "failing to promote" is an adverse employment action for purposes of a Title VII discrimination claim (quoting *Douglas v. Preston*, 559 F.3d 549, 552 (D.C. Cir. 2009))); Markowicz Dep. 29:24–30:15, ECF No. 29-2. Second, Special Agent Markowicz has shown that his non-promotion gives rise to an initial inference of discrimination because he was similarly qualified—and in some respects better-qualified—to the Special Agents who were promoted. *See Holcomb v. Powell*, 433 F.3d 889, 895–96 (D.C. Cir. 2006) (holding that plaintiff gave rise to an inference of discrimination by showing that neither the plaintiff's lack of qualifications nor the absence of a vacancy prevented the plaintiff's promotion); Def.'s Mot. Ex. 10; Def.'s Mot. Ex. 11. Third, Assistant Director Luczko's alleged statement that the Advisory Board was required to promote minority applicants over Special

presenting such a reason, the burden then shifts back to the plaintiff to discredit the employer's nondiscriminatory explanation. *Id*.

While the *McDonnel Douglas* framework provides a good starting point, courts in this Circuit apply a more simplified framework where, as here, the employer has asserted a legitimate, non-discriminatory reason for the employment decision at issue. In such cases, "the district court must resolve one central question: Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of race, color, religion, sex, or national origin?" *Brady*, 520 F.3d at 494. In other words, has the plaintiff demonstrated that the employer's proffered reasons were pretextual?

Special Agent Markowicz asserts that the record contains both direct and circumstantial evidence that the Department's decision not to promote him was driven by prohibited race discrimination. Applying the principles laid out above, the Court must evaluate (1) whether Special Agent Markowicz has provided direct evidence of discrimination; and (2) if not, whether Special Agent Markowicz's circumstantial evidence could allow a reasonable jury to conclude that discrimination motivated the Department's decision. *See Mastro*, 447 F.3d at 855. The Court concludes that while Special Agent Markowicz has not provided direct evidence of discrimination, his circumstantial evidence could allow a reasonable jury to conclude that the

---

Agent Markowicz indicates that there are "background circumstances" supporting Special Agent Markowicz's claim. *See Mastro*, 447 F.3d at 851–52 (explaining that "background circumstances" include any evidence showing that "there is something 'fishy' about the facts of the case," and may include "evidence that a minority applicant was promoted over . . . [a] better-qualified white applicant[]" (internal quotation marks omitted) (quoting *Harding v. Gray*, 9 F.3d 150, 153 (D.C. Cir. 1993)); Markowicz Sept. 2011 Decl. ¶ 9.

Department's reasons for his non-promotion are pretextual. The Court therefore denies

Defendant's motion for summary judgment. *See Scott*, 550 U.S. at 380.

## B. Direct Evidence

The Court first considers Special Agent Markowicz's argument that he has produced

direct evidence of retaliation. *See* Pl.'s Opp'n at 6–9. As set forth above, direct evidence of

discrimination entitles a plaintiff to a jury trial. *See Ayissi–Etoh*, 712 F.3d at 576–77; *Francis v.*

*Perez*, 970 F. Supp. 2d 48, 62 (D.D.C. 2013) ("A plaintiff may, however, bypass the *McDonnell*

*Douglas* framework altogether by presenting so-called 'direct evidence'—expressions by the

decision maker that [provide] evidence of discriminatory intent *without any need for inference*."

(emphasis added)). Direct evidence of discrimination may, for instance, consist of an employer

policy that is discriminatory on its face, or a statement by a decision maker involved in the

employment decision at issue that explicitly mentions race as a factor in the decision making

process. *See, e.g.*, *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121–22 (1985)

(explaining that a policy that was discriminatory on its face was direct evidence of

discrimination); *Ayissi–Etoh*, 712 F.3d at 576–77 (holding that the employer's reference to the

employee's status as a "young black man" while contemplating his promotion was direct

evidence of discrimination); *Lane v. Vasquez*, 961 F. Supp. 2d 55, 75 (D.D.C. 2013) (holding

that the employer's comment that the employee "filed an EEO complaint and would never be

hired [was] direct evidence of retaliation").

Here, Special Agent Markowicz claims that Assistant Director Luczko's alleged

statement—"if there is a Black or a Hispanic on that qualified list… then we have to promote

them ahead of you"—is direct evidence of discrimination. Pl.'s Opp'n at 7; Markowicz Dep.

57:24–58:1. He argues that the statement is direct evidence because it "was made by the very

individual responsible in whole or part for the adverse employment decision to non-select Plaintiff," and it was "related to the decision making process because the professed bias of promoting only Black and Hispanic candidates at the expense of Caucasian employees is furthered by not selecting Plaintiff." *Id*. Because this statement was purportedly made by "the decision maker . . . around the time the decision was made," Special Agent Markowicz contends that the Court need not apply the *McDonnel Douglas* framework and instead should simply deny Defendant's motion. *Id*. at 7–8 (citing *Burns v. Gadsden State Cmty.. College*, 908 F.2d 1512, 1518 n.9 (11th Cir. 1990)); *see Francis* 970 F. Supp. 2d at 62.

Markowicz correctly describes how the Court should treat direct evidence of discriminatory intent, but he has failed to establish a prerequisite for the Court to treat Assistant Director Luczcko's statement as direct evidence here. He has not shown that Assistant Director Luczko was a decision maker with respect to Vacancy 10101, the employment decision at issue. It is undisputed that Assistant Director Luczko was a member of the Secret Service Advisory Board in late 2010, when Vacancy 10101 opened. Def.'s Statement ¶¶ 15–19; 2017 Decl. of George Luczko ("Luczko 2017 Decl.") ¶ 2, ECF No. 29-6; Def.'s Mot. Ex. 13. It is also undisputed that the Board filled that vacancy. Def.'s Statement ¶¶ 15–19. However, Assistant Director Luczko stated that he was on medical leave at the time of the Board's meeting regarding Vacancy 10101, so he "did not participate in any of the discussions regarding whom should fill [the vacancy]." Luczko 2017 Decl. ¶ 5; Def.'s Mot. Ex. 13. He also stated that he "did not instruct [his temporary replacement] on how she should vote on the recommended candidates for vacancies in other directorates, to include Vacancy Number 10101." Luczko 2017 Decl. ¶ 6. Therefore, while Assistant Director Luczko was involved with the decision making body, he

asserts, without contradiction, that he "played no role, either directly or indirectly, in the decision regarding Vacancy 10101." Luczko 2017 Decl. ¶ 7.

Special Agent Markowicz has not disputed the Department's assertion that Assistant Director Luczko was not involved in his promotion decision, and Special Agent Markowicz has not presented facts contradicting Assistant Director Luczko's firm disavowal of any involvement. *See* Def.'s Statement ¶ 31–32; *see generally* Pl.'s Statement. And Special Agent Markowicz's conclusory assertion that Assistant Director Luczko was a relevant decision maker is not sufficient to raise a dispute of fact with respect to this issue. *See Harding v. Gray,* 9 F.3d 150, 154 (D.C. Cir. 1993) ("[A] mere unsubstantiated allegation . . . creates no 'genuine issue of fact' and will not withstand summary judgment."). Therefore, the Court concludes that Assistant Director Luczko was not a decision maker with respect to Vacancy 10101.

Assistant Director Luczko did not participate in the Advisory Board's decision not to promote Special Agent Markowicz—he was not even in the building when the decision was made—so he does not have direct knowledge of whether the Board took race into account when making its decision. His statement that the Board must promote "a Black or a Hispanic" over a white candidate is speculative with respect to Vacancy 10101. For the Court to treat Assistant Director Luczko's statement as evidence of discrimination against Special Agent Markowicz, it must *infer* that Assistant Director Luczko's alleged discriminatory experience during other promotion decisions occurred during this decision, despite Assistant Director Luczko's absence. *See Francis*, 970 F. Supp. 2d at 62.

Because Assistant Director Luczko's statement requires the Court to *infer* that the Advisory Board considered race in its deliberations regarding Vacancy 10101, it is not the kind of direct evidence that ensures a jury trial. *Compare Spaeth v. Georgetown Univ.*, 943 F. Supp.

2d 198, 206 (D.D.C. 2013) (noting that direct evidence does not include "statements by nondecisionmakers") (quoting *Price Waterhouse v. Hopkins*, 490 U.S. 228, 277 (1989) (O'Connor, J., concurring)) *with Ayissi–Etoh*, 712 F.3d at 576–77 (holding that the decision maker's statement invoking the plaintiff's race was direct evidence entitling the plaintiff to a jury trial on his race discrimination claims); *Burns*, 908 F.2d at 1518 (holding that decision maker's remark that "no woman would be named to [the job at issue]" was direct evidence of discriminatory motive in failing to hire a woman for that position). The Court will, however, consider Assistant Director Luczko's statement as circumstantial evidence of the Department's discrimination. *See Singleton*, 402 F. Supp. 2d at 26 (treating a relevant supervisor's statement as indirect evidence of discriminatory animus where "it is uncontested that [the supervisor] had no role in Plaintiff's [non-selection]").

### C. Circumstantial Evidence

Having dispensed of Special Agent Markowicz's direct evidence of discrimination, the Court turns to the *Brady* framework to evaluate his circumstantial evidence. The Department argues that even if Special Agent Markowicz has made out a *prima facie* case of discrimination, it "has a legitimate, non-retaliatory reason for its actions that Plaintiff cannot show to be pretextual, namely, that Plaintiff was not as qualified for the position as the selectees." Def.'s Mot. at 7.

As noted above, because the Department has proffered a nondiscriminatory explanation for its decision, the "one central inquiry" on summary judgment is "whether the plaintiff produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the plaintiff on a prohibited basis." *Adeyemi v. District of Columbia,* 525 F.3d 1222, 1226

(D.C. Cir. 2008) (quoting *Brady*, 520 F.3d at 494–95). The Court must consider this question "in light of the total circumstances of the case," asking "whether the jury could infer discrimination from the combination of (1) the plaintiff's *prima facie* case; (2) any evidence the plaintiff presents to attack the employer's proffered explanation for its actions; and (3) any further evidence of discrimination that may be available to the plaintiff . . . or any contrary evidence that may be available to the employer." *Aka*, 156 F.3d at 1289. Because in appropriate cases a "factfinder's disbelief of the reasons put forward by the defendant" may support an inference of intentional discrimination, *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 511 (1993), a Title VII plaintiff is not typically required "to submit evidence over and above rebutting the employer's stated explanation in order to avoid summary judgment." *Aka,* 156 F.3d at 1290.

There are multiple ways in which a plaintiff may support an inference that an employer's stated reason for a challenged employment action was not the real reason, and that the real reason was prohibited discrimination. The D.C. Circuit has noted that "common ways of proving invidious motive—whether retaliation or discrimination—include pointing to evidence that the employer treated other, similarly situated employees better; that the employer is 'lying about the underlying facts' of its decision; that there were 'changes and inconsistencies' in the employer's given reasons for the decision; that the employer failed to 'follow established procedures or criteria'; or that the employer's 'general treatment of minority employees' . . . was worse than its treatment of non-minorities." *Allen v. Johnson*, 795 F.3d 34, 40 (D.C. Cir. 2015).

The Department does not assert that Special Agent Markowicz was unqualified for Vacancy 10101, but rather that the successful candidates were more qualified. Def.'s Mot. at 7. It states that, in addition to his basic qualifications, Special Agent Wynn was recommended for the position over Special Agent Markowicz because he had experience in the Intelligence

Division (the precursor to the PIAD), and because he was previously a member of the Presidential Protective Division. *See* Elias Decl. ¶ 21; Magaw Decl. ¶¶ 23, 27; Garabito Decl. ¶¶ 11, 16–17, 19. This experience was relevant because it meant he had working knowledge of PIAD's processes and internal dynamics, and because PIAD provides significant support to the Presidential Protective Division, so "[Presidential Protective] experience would bring a [Presidential Protective] perspective to PIAD as to [the Presidential Protective Division's] needs and requirements." Magaw Decl. ¶¶ 23, 27. Special Agent Naranjo was recommended because he was already a "higher performer" within PIAD. *See* Elias Decl. ¶ 21; Magaw Decl. ¶ 23, 27; Garabito Decl. ¶¶ 8, 16–17, 19. The Advisory Board felt that a current PIAD Special Agent would be able to "hit the ground running," that an internal candidate would require less training than an external candidate, and that an internal hire would increase morale within the division. *See* Garabito Decl. ¶ 19.[9] In contrast, the Department points out that Special Agent Markowicz did not have experience in the Intelligence Division, PIAD, or the Presidential Protective Division. *See* Elias Decl. ¶ 21; Magaw Decl. ¶ 28; Garabito Decl. ¶ 21.[10]

Special Agent Markowicz argues that the Department's proffered reasons for denying his promotion are post hoc rationalizations of a discriminatory decision. According to Special Agent Markowicz, a reasonable jury could infer discrimination based on (1) his superior qualifications

---

[9] While Special Agent in Charge Garabito was not a selecting official or a member of the Advisory Board, both parties agree that he provided substantial input regarding Vacancy 10101, and courts regularly treat recommending and selecting officials similarly and assume that recommending officials wield significant decision making power. *See, e.g.*, *Carter v. Mineta*, 125 Fed. Appx. 231, 232, 235–36 (10th Cir. 2005); *Hairsine v. James*, 517 F. Supp. 2d 301, 304–05, 307–14 (D.D.C. 2007); *Simpson v. Leavitt*, 437 F. Supp. 2d 95, 99–100 (D.D.C. 2006); *Oliver–Simon v. Nicholson*, 384 F. Supp. 2d 298, 303–05, 307–14 (D.D.C. 2005); *Waters v. Gonzales*, 374 F. Supp. 2d 187, 189–96 (D.D.C. 2005).

[10] As noted above, while Special Agent Markowicz was a member of the William Clinton Protective Division, that Division protected the First Lady rather than the President.

for the position; (2) Assistant Director Luczko's statement; and (3) the highly subjective nature of the government's selection process and its inconsistent application of the proffered criteria. *See generally* Pl.'s Opp'n. The Court will address each type of evidence below. It concludes that a reasonable jury could find that the Department's asserted non-discriminatory reasons for its decision were pretextual, and that the Department discriminated against Special Agent Markowicz based on his race when it failed to select him for one of the three open ATSAIC positions.

### 1. Qualifications Gap

Although Special Agent Markowicz relies on a range of evidence to attack the Department's proffered nondiscriminatory explanation, the parties' briefs focus first and foremost on the evidence of his qualifications and those of the promoted individuals. The Supreme Court has held that "qualifications evidence may suffice, at least in some circumstances," to show that an employer's proffered explanation is pretext for discrimination. *Ash v. Tyson Foods, Inc.,* 546 U.S. 454, 457 (2006). Although the Supreme Court has declined to define a precise standard for the analysis, the D.C. Circuit has developed a framework for evaluating claims "involving a comparison of the plaintiff's qualifications and those of the successful candidate." *Aka,* 156 F.3d at 1294. Under that framework, "[i]f a factfinder can conclude that a reasonable employer would have found the plaintiff to be significantly better qualified for the job, but this employer did not, the factfinder can legitimately infer that the employer consciously selected a less-qualified candidate—something that employers do not usually do, unless some other strong consideration, such as discrimination, enters into the picture." *Id.* On the other hand, "a reasonable juror who might disagree with the employer's decision, but would find the question close, would not usually infer discrimination on the basis of a comparison of qualifications *alone*." *Id.* (emphasis

added).  Accordingly, a disparity in qualifications, *standing alone*, can support an inference of discrimination only when the plaintiff is "markedly more qualified," "substantially more qualified," or "significantly better qualified" than the successful candidate.  *Holcomb,* 433 F.3d at 897 (internal quotation marks omitted).

Applying this standard here, whether a jury confronted with the evidence could find that Special Agent Markowicz was "significantly" or "markedly" more qualified than Special Agents Edwards, Wynn and Naranjo, and thus infer discrimination based on qualifications evidence *alone*, is a relatively close question.  *Holcomb,* 433 F.3d at 897.  Assistant Director Elias stated, albeit nearly a year *after* the Advisory Board's decision, that he applied the following criteria when evaluating candidates for Vacancy 10101:[11]

- Whether the individual was recommended for a position by the Special Agent in Charge (in this case, Special Agent in Charge Garabito);

- The diversity of the candidate's assignments in terms of geographical locations and operational divisions/entities;

- The candidate's recent exposure to the protective responsibilities of the Secret Service ("for PIAD supervisory assignments, it is beneficial, but not vital, that the candidate has recently served on a major protective division");

- Prior experience in PIAD;

- The candidate's performance in his previous assignments;

- The length of time the candidate had been in his or her current position;

---

[11] As discussed in more detail below, in Section III(C)(3), Assistant Director Elias's declaration was submitted in response to Special Agent Markowicz's administrative complaint. The lack of records contemporaneous with the Advisory Board's decision casts doubt on the legitimacy of these criteria and their application.

- The candidate's supervisory experience;

- The candidate's unique skills;

- The candidate's career track;

- The candidate's MPP score; and

- The promotion's effect on the division's morale.

Elias Decl. ¶ 8.  He also stated that the Advisory Board "will generally look for promotion candidates who have completed an initial field assignment, an initial protection assignment, and a post-protection GS-13 assignment."  Elias Decl. ¶ 3.  Similarly, Deputy Assistant Director Magaw stated that, in addition to candidates' MPP scores, their "prior assignments, skill set, supervisory experience, overall experience, as well as other factors specific to the particular vacancy are considered."  Magaw Decl. ¶¶ 8, 23.

It is undisputed that Special Agent Markowicz had a higher MPP score than Special Agents Wynn and Naranjo.  Special Agent Markowicz's MPP score, 79.83, ranked fifth on the Promotion Certificate and twenty-fifth on the nationwide Promotion Register.  Markowicz Oct. 2017 Decl. at 7; Markowicz Sept. 2011 Decl. ¶ 13; Def.'s Mot. Ex. 10.  Special Agent Wynn's score, 77.94, ranked eighteenth on the Promotion Certificate and seventy-fifth on the nationwide Promotion Register.  Markowicz Oct. 2017 Decl. at 7; Markowicz Sept. 2011 Decl. ¶ 13; Def.'s Mot. Ex. 10.  And Special Agent Naranjo's score, 77.37, ranked twentieth on the Promotion Certificate and ninety-second on the nationwide Promotion Register.  Markowicz Oct. 2017 Decl. at 7; Markowicz Sept. 2011 Decl. ¶ 13; Def.'s Mot. Ex. 10.

The parties do dispute, however, the significance of Special Agent Markowicz's higher MPP score.  The Department argues that "the MPP score is a particularly poor metric to distinguish between Plaintiff and the selectees given that the range of scores among the eligible

candidates was extremely narrow."[12]  Def.'s Mot. at 12.  On the other hand, Special Agent

Markowicz contends that the disparity—2 points between him and Special Agent Wynn, and 2.5

points between him and Special Agent Naranjo—is a big gap when considering the difference in

rankings (Special Agent Markowicz was ranked twenty-fifth; Special Agent Wynn seventy-fifth;

and Special Agent Naranjo ninety-second on the nationwide Promotion Register), and that agents

must score a 75 to pass the exam.  Markowicz Dep. 52:18–53:14; Markowicz Oct. 2017 Decl. at

7.  He also points out that the MPP score is not a single criterion, but in fact measures (1) a

supervisor's evaluation; (2) an "in-basket" assessment designed to simulate an on-the-job

situation; (3) a situational judgment test; and (4) a "Career Accomplishment Record" score

accounting for the Special Agent's career achievements.  Def.'s Mot. Ex. 8 at 138–42; Nov. 2011

Decl. of Michael Markowicz ("Markowicz Nov. 2011 Decl.") at 42, Pl.'s Opp'n Ex. C, ECF

No. 31.[13]  The Department's Merit Promotion Plan supports this point, stating that the MPP

score captures "important competencies required for effective performance at the supervisory

level."  Def.'s Mot. Ex. 8 at 13.  And the MPP score is not the only criterion for which Special

Agent Markowicz appears to have an advantage over the successful candidates.[14]

---

[12] While the range of absolute scores may appear compressed, the Department's characterization of the range as "extremely narrow" is unsupported by standard deviations or other statistical evidence.  Without more statistical context, the Court cannot conclude that the MPP score is a "poor metric" to distinguish amongst candidates.

[13] Because Special Agent Markowicz's November 2011 declaration lacks internal page or paragraph numbers, the Court cites to the page numbers automatically generated by ECF.

[14] Special Agent Markowicz also asserts that on two other occasions in 2010, the Secret Service promoted a minority applicant with a lower MPP score over a higher-ranked, white, male applicant. *See* Markowicz Sept. 2011 Decl. ¶ 9.  He has failed, however, to establish that this pattern is statistically significant and, aside from his statements, he has not provided other evidence related to the Department's treatment of white men outside of Vacancy 10101. Because a plaintiff must "establish the statistical significance of his [pattern-or-practice] evidence" for it to be probative of discrimination, the Court affords this evidence little weight. *Bolden v. Clinton*, 847 F. Supp. 2d 28, 35 (D.D.C. 2012).  This is particularly true because, as the

Special Agent Markowicz also had more experience and a greater diversity of assignments than Special Agents Wynn and Naranjo.  When Special Agent Markowicz applied for the promotion in late-2010, he had approximately fifteen years of total experience in the Secret Service, with five career assignments that included two major field offices (Houston and Washington, D.C.) and three protective detail assignments (including the Vice President's detail) totaling nearly nine years of protective detail experience.  Markowicz Oct. 2017 Decl. at 3, 7; Def.'s Mot. Ex. 11.  By contrast, Special Agents Wynn and Naranjo both had approximately twelve years of total experience, Special Agent Wynn had completed only four career assignments, and Special Agent Naranjo was in the middle of his third career assignment.  Markowicz Nov. 2011 Decl. at 49; Def.'s Mot. Ex. 11.  Furthermore, Agent Naranjo had not yet completed his protection assignment at the time of Vacancy 10101, and thus had never begun a post-protection assignment.  Markowicz Nov. 2011 Decl. at 50.

To be sure, Agents Naranjo and Wynn both had experience within PIAD and its precursor, and Agent Wynn was previously a member of the Presidential Protective Division, both credentials which Special Agent Markowicz lacked.  Department Statement ¶¶ 21–25.  However, Special Agent Markowicz asserts that he received the same type of intelligence during his tenure in the Vice Presidential Protective Division as agents detailed to the President received.  Markowicz Dep. 25:17–25; Markowicz Nov. 2011 Decl. at 54.  On balance, while Special Agents Naranjo and Wynn had certain relevant experience that Special Agent Markowicz allegedly lacked, Special Agent Markowicz had the stronger objective credentials. [15]

_____

Department correctly points out, much of Special Agent Markowicz's showing on this issue is based on hearsay evidence.  Def.'s Reply at 14–15.

[15] Special Agent Markowicz claims that he has additional, similar relevant experience to Special Agents Wynn and Naranjo because he coordinated with PIAD on intelligence matters while assigned to the Houston Field Office, and because his involvement in the "Presidential

That said, it is difficult to say that Special Agent Markowicz's qualifications "weighed markedly" in his favor. *Aka*, 156 F.3d at 1295.  In *Aka*, the D.C. Circuit found a qualifications gap sufficient to infer discrimination where the plaintiff had a graduate degree and nineteen years of relevant experience, while the successful candidate did not have a college degree and had at most one year of relevant experience. *Id*. at 1295–98.  The court in *Hamilton v. Geithner*, on the other hand, found that such an inference was not clearly raised where the plaintiff held bachelor's and master's degrees in relevant fields and nineteen years of relevant experience, while the successful candidate had no college degree, little formal training, and only eight years of relevant experience.  666 F.3d 1344, 1352 (D.C. Cir. 2012).  Even though the plaintiff "had far more formal training and education," "significantly greater technical expertise," and "broader [relevant] experience" than the successful candidate, the court reasoned that it was "a relatively close question" whether the qualifications gap was sufficient to support an inference of discrimination. *Id*.  Further, the Department correctly notes that the Court need not and should not evaluate which factors should have been most important to the Advisory Board in making its decision. *Stewart v. Ashcroft*, 352 F.3d 422, 429 (D.C. Cir. 2003) (stating that "courts are not superpersonnel departments that reexamine[] an entity's business decisions").

---

Successor Program" is an intelligence-heavy role.  Markowicz Oct. 2017 Decl. at 8–9.  The Department correctly notes, however, that such information is only relevant if the Advisory Board would have been aware of it when considering Vacancy 10101, and Special Agent Markowicz failed to submit evidence indicating such awareness. *See Youssef v. Lynch*, 144 F. Supp. 3d 70, 82 (D.D.C. 2015) (holding that the plaintiff could only introduce qualifications evidence upon establishing a "factual predicate as to why the [decision maker] in question would have known that specific information and should have considered… that information in the selection process").  Moreover, the other candidates would presumably have had similar position-specific experiences not before the Advisory Board that would have similarly enhanced their relative standing.  The Court therefore declines to consider Special Agent Markowicz's alleged additional qualifications in its analysis.

Here, Special Agent Markowicz has a higher MPP score and a more robust work history—both in terms of protective and supervisory experience, and diversity of assignments—but he has conceded that he lacks certain relevant experience that Special Agents Wynn and Naranjo possessed. *See* Markowicz Dep. 25:17–22, 27:25–28:2 (admitting that past Intelligence Division and Presidential Protection Detail experience would be beneficial for Vacancy 10101). All three Special Agents were qualified for the position, and on paper were capable of effectively handling it. Standing *alone*, in light of the case law in this Circuit, the qualifications difference is likely not "great enough to be inherently indicative of discrimination." *Adeyemi,* 525 F.3d at 1227. But nor can it be said that on this record alone Special Agents Wynn and Naranjo were more qualified than Special Agent Markowicz—the Department's purported reason for promoting them.

Given the record in this case, however, the Court need not conclusively resolve whether a jury could infer discrimination based on qualifications evidence alone. In *Hamilton*, the D.C. Circuit considered the qualifications gap to be one piece of a body of circumstantial evidence suggesting discrimination. 666 F.3d at 1355. It explained that "even if [the qualifications gap] alone is insufficient, a reasonable jury, considering [the plaintiff's] stronger qualifications together with 'other flaws in the employer's explanation' could still reach a verdict in the plaintiff's favor." *Id*. (quoting *Holcomb*, 433 F.3d at 897); *see also Lee v. GTE Fla., Inc.*, 226 F.3d 1249, 1253 (11th Cir. 2000) ("[E]vidence showing an employer hired a less qualified applicant over the plaintiff may be probative of whether the employer's proffered reason for not promoting the plaintiff was pretextual.").

The Court must "review the record taken as a whole," and Special Agent Markowicz is "expressly *not* limited to comparing [his] qualifications against those of the successful applicant;

[he] may seek to expose other flaws in the employer's explanation." *Hamilton*, 666 F.3d at 1352 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150 (2000); *Holcomb,* 433 F.3d at 897). Here, Special Agent Markowicz does not just rely on comparative qualifications evidence; he also "seek[s] to expose procedural irregularities in a highly subjective selection process." *Id.* (citing *Holcomb*, 433 F.3d at 897). Reviewing the record as a whole, the evidence of Special Agent Markowicz's superior qualifications, taken together with "other flaws in the employer's explanation, creates a genuine issue of material fact that only a jury can resolve." *Id.*

## 2. Assistant Director Luczko's Statement

Having determined that Assistant Director Luczko's statement is not direct evidence of discrimination, *supra* Section III(B), the Court now evaluates its significance as circumstantial evidence. The Department argues that Assistant Director Luczko's statement should be afforded no weight because it "is not competent evidence of what happened with respect to Plaintiff's non-selection, in which Luczko played no role whatsoever and to which Luczko cannot competently testify." Def.'s Mot. at 16. It contends that the statements, if proffered to confirm that Special Agent Markowicz was discriminated against, run afoul of Federal Rule of Evidence 602, requiring that a lay witness have personal knowledge of the testimony's subject, and Federal Rule of Evidence 701, requiring that opinion testimony be "rationally based on the witness's perception." *Id.* On the other hand, Special Agent Markowicz argues that Assistant Director Luczko's statement is relevant because he "was in close proximity to the selecting officials, participated on the same Board with them, was involved in the selection process generally, and is a first-hand witness to the selection criteria of the Board." Pl.'s Opp'n at 6. The Department is correct that Assistant Director Luczko's statement is not direct evidence that Special Agent Markowicz was discriminated against, but, as noted in the Court's prior Memorandum Opinion,

the Department again fails to appreciate the statement's significance.  *See Markowicz*, 206 F. Supp. 3d at 175.

While Assistant Director Luczko was not a decision maker for Vacancy 10101, it is undisputed that he was a member of the Advisory Board in late-2010 and therefore has personal knowledge of the Board's practices at the time of Vacancy 10101.  Def.'s Statement ¶ 30; Luczko 2017 Decl. ¶¶ 1–2; Def.'s Mot. Ex. 13.  On summary judgment, the non-movant's evidence must be believed, *Anderson*, 477 U.S. at 255, so the Court assumes that Assistant Director Luczko told Special Agent Markowicz, "if there is a Black or a Hispanic on that qualified list, then we . . . have to promote them ahead of you." [16]  Markowicz Sept. 2011 Decl. ¶ 9.

Although it is not directly applicable to Special Agent Markowicz's non-promotion, Assistant Director Luczko's statement suggests a "discriminatory atmosphere" within the Advisory Board, which "could serve as circumstantial evidence of individualized discrimination."  *Parker v. Sec'y, U.S. Dep't of Hous. & Urban Dev.*, 891 F.2d 316, 322 (D.C. Cir. 1989) (noting that discriminatory action by the relevant decision making body, even if unrelated to the plaintiff's employment decision, was relevant to the Title VII analysis); *see also Kelley v. Airborne Freight Corp.*, 140 F.3d 335, 347 (1st Cir. 1998) ("statements by nondecisionmakers can be evidence that a discriminatory atmosphere pervades the workplace and infects the company's personnel decisions").  In *Morris v. McCarthy*, for instance, the D.C.

---

[16] As noted in the Court's prior Memorandum Opinion, while the only evidence of Assistant Director Luczko's statement is Special Agent Markowicz's recollection of that statement, as a statement of an opposing party or the opposing party's agent it likely is not hearsay.  *Markowicz*, 206 F. Supp. 3d at 175 n.9 (citing Fed. R. Evid. 802(d)(2)(D) (stating that statements are not hearsay when "offered against an opposing party and . . . made by the party's agent or employee on a matter within the scope of that relationship and while it existed.")).  And the Department does not argue that it is.

Circuit determined that the lower court failed to give sufficient weight to a supervisor's race-based remarks about employees other than the plaintiff, for instance referring to co-workers as "nasty little white boys" and lamenting a different supervisor's alleged reluctance to promote African American employees. 825 F.3d 658, 669–71 (D.C. Cir. 2016). The Circuit held that, when combined with the plaintiff's evidence of weaknesses in the defendant's explanation for her non-promotion, the remarks could cause a reasonable jury to infer discrimination. *Id*; see also *Evans v. Sebelius*, 716 F.3d 617, 621–22 (D.C. Cir. 2013) (holding that racially insensitive behavior within the relevant department, in combination with other evidence, could lead a jury to infer discrimination).

While the D.C. Circuit has determined in certain circumstances that isolated race-based remarks are insufficient to cause an inference of discrimination, those cases involve statements made by individuals with no involvement in the hiring or promotion process, and the statements are typically the only evidence submitted by the plaintiffs. *See Hampton v. Vilsack*, 685 F.3d 1096, 1101 (D.C. Cir. 2012) (affording little weight to a racial epithet made five years before the relevant decision, where there was "no evidence that [the employer] was in any way influenced by [the employee who made the inflammatory statement]", and no additional evidence of discrimination (internal quotation omitted)); *Morgan v. Fed. Home Loan Mortg. Corp.*, 328 F.3d 647, 654–55 (D.C. Cir. 2003) (holding that a single racially degrading e-mail sent by an employee of the defendant uninvolved in the hiring process was not sufficient on its own for the plaintiff to overcome summary judgment). Here, on the other hand, Special Agent Markowicz relies on Assistant Director Luczko's statement as one piece of an assemblage of circumstantial evidence casting doubt on the Department's explanation for his non-promotion.

Seemingly anticipating this argument, the Department claims that Assistant Director Luczko's statement is "at most, 'evidence of…general instances of discrimination,'" and it cites cases establishing that Special Agent Markowicz cannot rely solely on anecdotal evidence that the Department discriminated against other individuals to show that the Department discriminated against him here. Def.'s Mot. at 17. But those cases do not hold that such evidence must be wholly discounted, and in fact the court in one of those cases relied on a similar statement in denying the defendant's motion for summary judgment. In *Williams v. Boorstin*, the D.C. Circuit noted that evidence that the defendant discriminated against other employees was "collateral," where the plaintiff had "a formidable record of lying to his employer," had received very favorable reviews and promotions up until the employer discovered the lies, and could not make out a *prima facie* case of discrimination. 663 F.2d 109, 115 n.38, 117–18 (D.C. Cir. 1980). The plaintiff put forth no other evidence of discrimination, and the defendant's evidence in support of its nondiscriminatory explanation was overwhelming. *Id.* In *Morris*, the Circuit held that the plaintiff introduced sufficient evidence to survive summary judgment, in part because of "race-based remark[s] unrelated to the relevant employment decision." 825 F.3d at 669–71. And in the case most heavily cited by the Department, *Rayl v. Fort Wayne Cmty. Schs.*, the court acknowledged that "alleged statements made by nondecisionmakers are admissible as evidence of discrimination," if proffered with additional evidence suggesting discriminatory intent. 87 F. Supp. 2d 870, 885 (N.D. Ind. 2000).

Assistant Director Luczko's statement provides context for how the Advisory Board treats race in its decision making, and in this Circuit such evidence may contribute to an inference that the Board discriminated against Special Agent Markowicz. *See Brady*, 520 F.3d at 495 (D.C. Cir. 2008) (noting that a plaintiff may establish that an employer's nondiscriminatory

reason for its employment action was pretextual by using "evidence suggesting that the employer treated other employees of a different race . . . more favorably in the same factual circumstances"). The jury could reasonably draw such an inference here, particularly in light of the other circumstantial evidence of discrimination on the record.[17]

### 3. The Department's Inconsistent Application of its Proffered Reasons

Finally, the Court addresses "other flaws in the [Department's nondiscriminatory] explanation." *Hamilton*, 666 F.3d at 1352 (quoting *Holcomb*, 433 F.3d at 897). The record indicates two key flaws. First, the Department's proffered nondiscriminatory reasons for its decision not to promote Special Agent Markowicz were based on subjective considerations. Second, Special Agent Markowicz has shown that those factors were not applied consistently to the candidates for Vacancy 10101. The significance of these flaws turns on the credibility of the Department's decision makers, an issue that is "quintessentially one for the finder of fact." *Aka*, 156 F.3d at 1298–99.

The Department's proffered reasons for not selecting Special Agent Markowicz to fill Vacancy 10101 are based on subjective determinations about which types of experience would be valuable to the position. It claims that it selected Special Agent Wynn over Special Agent Markowicz, despite Special Agent Markowicz's more substantial body of work and higher MPP score, because Special Agent Wynn had prior experience in the Intelligence Division (the precursor to the PIAD) and in the Presidential Protective Detail, and because he "had a reputation of being a hard worker in his prior assignments." Def.'s Statement ¶ 21–23.

_____

[17] The Department attempts to cast doubt on Assistant Director Luczko's knowledge of the Advisory Board's practices, Def.'s Reply at 2–4, but it admits that he was a participating member of the Advisory Board at the time of Special Agent Markowicz's non-promotion. Def.'s Statement ¶ 30. It is the jury's role, not the Court's to evaluate whether he made the statement at issue and, if so, whether that statement was credible.

Similarly, Special Agent Naranjo was selected because he was "already an effective performer in PIAD" and because an internal promotion would raise the division's morale. Def.'s Statement ¶ 24; Garabito Decl. ¶ 18. While Special Agent Markowicz had experience with the Vice Presidential Protective Division, the Department claims it was significant that he did not have Intelligence Division or Presidential Protective Division experience. Def.'s Statement ¶ 25.

"Although employers may of course take subjective considerations into account in their employment decisions, courts traditionally treat explanations that rely heavily on subjective considerations with caution." *Aka*, 156 F.3d at 1298. The Department appears to have applied such subjective considerations here. Its assertion that relevant experience within PIAD or its predecessor would be beneficial for a Special Agent filling a key PIAD vacancy is well taken. *See Aka*, 156 F.3d at 1297 (holding that the plaintiff was significantly more qualified than the successful candidate because he had worked in a similar position for the same employer for nineteen years, and "would have been familiar with many of the relevant… procedures"). But aside from its declarations, all of which post-date the decision by several months and were generated *after* Special Agent Markowicz filed an administrative complaint, the Department has put forth no evidence showing why experience with the Presidential Protective Division would be more valuable than Special Agent Markowicz's experience with the Vice Presidential Protective Division. Garabito Decl. ¶ 19; Magaw Decl. ¶ 23. Special Agent Markowicz has asserted that Special Agents in both details receive the same intelligence information, with only slight differences in how it is transmitted. Markowicz Nov. 2011 Decl. at 54.

And the Department's assertions that Special Agent Naranjo's promotion would raise morale in the division, and that Special Agent Wynn was a hard worker, are particularly subjective because it is difficult, if not impossible, to measure morale, and hard work may take

many forms.  *See* Markowicz Nov. 2011 Decl. at 50–51 (stating that Assistant Director Elias

"does not know me or my work ethic"); Elias Decl. ¶ 21.  Moreover, there is no evidence that

Special Agent Markowicz was not also a hard worker; an attribute that may have been reflected

in his higher MPP score.  The D.C. Circuit has flagged similar soft factors as being particularly

subjective, for instance "enthusiasm" for a job, *Aka*, 156 F.3d at 1298, and "interpersonal skills,"

*Fischbach v. D.C. Dep't of Corrs.,* 86 F.3d 1180, 1184 (D.C. Cir. 1996).  Special Agent

Markowicz also points out that other Department vacancies during this period listed

prerequisites, yet Presidential Protective Division and Intelligence Division experience were not

listed as prerequisites for Vacancy 10101.  Markowicz Nov. 2011 Decl. at 56; Def.'s Mot. Ex.

12.  Here, where Special Agent Markowicz appears to be better-qualified in many respects than

the successful candidates, a jury could reasonably find that the Department's "subjective feelings

about the candidates may mask discrimination."  *Aka*, 156 F.3d at 1298.

Courts' skepticism of subjective factors is particularly strong when an employer has not

demonstrated that it relied on those factors at the time of the relevant hiring decision.  *See*

*Hamilton*, 666 F.3d at 1355–56 (holding that an absence of contemporaneous documentation of

the defendant's proffered explanation, "could lead a reasonable jury to doubt the [defendant's]

explanation").  Here, the record does not contain a contemporaneous policy identifying the

Advisory Board's promotion criteria when it deliberated over Vacancy 10101.  *See* Garabito

Decl. ¶ 19 (stating that he has "no job description or announcement to cite" in support of the

criteria).  As Special Agent Markowicz points out, Assistant Director Elias and Deputy Assistant

Director Magaw identified the relevant criteria in declarations drafted *after* Markowicz filed his

administrative complaint.  Elias Decl. ¶ 8; Magaw Decl. ¶ 7–8; *see also* Markowicz Nov. 2011

Decl. at 55 (stating his belief that Deputy Assistant Director Magaw identified that Special Agent

Wynn had previous Intelligence Division experience "*after* having been served an affidavit, based on [Special Agent Markowicz's] complaint"). In light of this timing, a jury could reasonably believe that Assistant Director Elias and Deputy Assistant Director Magaw engaged in post hoc rationalization of a discriminatory decision. *See Aka*, 156 F.3d at 1299 ("In a jury's eyes, this omission [of a proffered criterion from documents contemporaneous with the employment decision] might also count as evidence that [the employer's] account of the interview was invented after the fact."). Without weighing the evidence and making a credibility determination between Special Agent Markowicz and the Department's witnesses, the Court cannot overlook Special Agent Markowicz's testimony in favor of the Department's version of events. *See Anderson*, 477 U.S. at 255 ("Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences are jury functions, not those of a judge.").

Along with the subjective nature of the Department's proffered nondiscriminatory reasons, Special Agent Markowicz asserts that those criteria were not applied in a consistent manner. For instance, the Department claims that it did not select Special Agent Markowicz because he lacked Presidential Protective Division and PIAD experience, but it selected Special Agent Edwards, who also lacked those qualifications and had less overall experience, fewer protection assignments, and less time in the Vice Presidential Protective Division than Special Agent Markowicz, but a higher MPP score.[18] Markowicz Nov. 2011 Decl. at 51; Def.'s Mot.

_____

[18] Special Agent Markowicz relies on Special Agent in Charge Garabito's declaration for his assertion that Special Agent in Charge Garabito initially "submitted the numerical top three (3) candidates to the [Advisory Board] for consideration for promotion," rather than making suggestions based on the more subjective criteria ultimately applied. *See* Markowicz Sept. 2011 Decl. ¶ 13; Markowicz Dep. 73:22–23. Special Agent in Charge Garabito denied submitting the three top ranked candidates, but did state that that "[i]t was discussed that selecting top candidates would improve the quality of the supervisors in the division and raise the overall perception of the division for future candidates," particularly given that "[t]he top candidates had good reputations and high merit promotion scores." Garabito Decl. ¶ 8. While this dispute does

Ex. 10–11.  Similarly, the Department states that it selected Special Agent Naranjo because of his PIAD experience, but two non-Hispanic candidates had more years of Intelligence Division experience than Special Agent Naranjo, along with higher MPP scores and more career assignments.  Markowicz Nov. 2011 Decl. at 52; Def.'s Mot. Ex. 10–11.  And the Department states that it selected Special Agent Wynn in part because of his Presidential Protective Division experience, but four white candidates had Presidential Protective experience and higher MPP scores, but were not promoted.  Markowicz Nov. 2011 Decl. at 53–54; Def.'s Mot. Ex. 10–11.[19]

To the extent that the Advisory Board emphasized certain factors over other factors when deciding which candidates should fill Vacancy 10101, Special Agent Markowicz has thus called into question whether those factors were used as a pretext to discriminate against him.  The Court is particularly skeptical of the Department's reasoning because the Department has not shown how the factors were applied at the time of its promotion decision, but rather has justified the decision post hoc.  *See Hamilton*, 666 F.3d at 1355–56.  Under the D.C. Circuit's pretext framework, Special Agent Markowicz has successfully "attack[ed] the employer's proffered explanation for its actions," *Aka*, 156 F.3d at 1289, creating a question of fact for the jury

---

potentially further suggest that the Department applied its promotion criteria in an inconsistent manner, Special Agent in Charge Garabito's declaration is not as clear cut as Special Agent Markowicz frames it to be.

[19] Special Agent Markowicz urges the Court to note Assistant Director Elias's suggestion in a different administrative case that a white candidate was selected over the minority complainant because the white candidate's MPP score was higher.  *See* Pl.'s Opp'n at 10–11; Elias Jan. 2013 Decl. ¶ 13, Pl's Opp'n Ex. E, ECF No. 31.  Special Agent Markowicz claims that this further illustrates irregularities in the selection process because "when attempting to justify the promotion of a Caucasian over minorities, [Assistant Director Elias] emphasized the MPP score but when attempting to rationalize the promotion of minorities over Caucasian, he consistently de-emphasized the MPP score."  Pl.'s Opp'n at 11.  The Court declines to give this evidence weight because Assistant Director Elias did not provide input for the candidate selections in that case, and merely agreed with the recommendations of a different Advisory Board Member.  Elias Jan. 2013 Decl. ¶ 12–14.

concerning the Department's motives in selecting the other candidates over Special Agent
Markowicz.

## IV. CONCLUSION

Special Agent Markowicz has presented circumstantial evidence related to (1) his
qualifications for Vacancy 10101 compared to the qualifications of the successful candidates; (2)
Assistant Director Luczko's statement about the Advisory Board's practices; and (3) the
Department's selection process and its, apparent, inconsistent application of its proffered criteria.
Although any one of these factors alone likely would not defeat summary judgment, the Court
must consider them all together. Giving all inferences to Special Agent Markowicz as the non-
moving party, and in light of the case law in this Circuit, the Court holds that there is a genuine
issue of material fact as to whether the Department's reasons for failing to promote Special Agent
Markowicz were pretextual, masking a discriminatory employment decision. For the foregoing
reasons, Defendant's motion for summary judgment (ECF No. 29) is **DENIED**. An order
consistent with this Memorandum Opinion is separately and contemporaneously issued.


Dated: June 20, 2018                                          RUDOLPH CONTRERAS
                                                             United States District Judge